## GEORGE P. VERNER *v.* MARY V. VERNER.

1. ALIMONY. *Bill for, without divorce. Whether maintainable.*
   It is not necessary that a bill for alimony should also seek a divorce in order to be maintainable. *Garland* v. *Garland,* 50 Miss. 694, and *Dewees* v. *Dewees,* 55 Miss. 315, cited.

2. SAME. *Allowance pendente lite. On case made by bill.*
   And where such bill presents a case entitling the complainant to permanent alimony and she is without means, she should be allowed alimony *pendente lite* for her support, solicitor's fee, and costs of conducting her suit. *Porter* v. *Porter,* 41 Miss. 116, cited.

3. SAME. *Pendente lite. Effect of sections* 1167, 1168, *Code* 1880. *Equitable rights of married women.*
   The wife's right to alimony *pendente lite* in such case is unaffected by §§ 1167 and 1168 of the Code of 1880, which enable a married woman to acquire, own, and dispose of property as a *feme sole,* and to bind herself by contracts in reference thereto or personally, and to sue and be sued by her husband or other person, there being no intention to supersede or abridge the equitable rights of married women by any provision in the code, except as expressly provided.

APPEAL from the Chancery Court of Monroe County.

HON. BAXTER MCFARLAND, Chancellor.

Mary V. Verner filed the bill in this suit against George P. Verner, alleging that on the 21st of December, 1882, she was married to the defendant, and lived with him till the 9th of September, 1883, during which time she made him a faithful and obedient wife; that on the day last named the defendant, without any good and sufficient cause, abandoned her and compelled her to leave his home and return to her mother's home; that they have lived apart since that time; that she has no separate estate but is dependent on her own exertions for maintenance and support; that the defendant has two thousand dollars' worth of property. The prayer of the bill is for permanent alimony upon final hearing and for alimony *pendente lite.* The defendant answered the bill, denying the allegation that he had abandoned the complainant without a good and sufficient cause, and opposing the prayer for alimony. Thereupon the court, on the motion of the

complainant, made an order allowing her one hundred and fifty dollars as alimony *pendente lite* for her support, solicitor's fee, and cost of conducting her suit, and requiring the defendant to pay the same to the clerk of the court for the complainant's benefit. From this order the defendant appealed.

*Sykes & Bristow*, for the appellant.

1. We submit that the provisions of §§ 1167, 1168 *of the code* entirely remove the basis upon which *pendente lite* alimony rests and entirely destroys the *reason* of it.

Let us first inquire what is the *basis*, the *reason*, of *pendente lite* alimony as contradistinguished from *permanent alimony*.

For the *latter* the wife proceeds like any other plaintiff—files her bill, makes her proof, litigates her case, and only secures a recovery when she has *proven* herself *entitled* to it.

The *former* she gets, as *a matter of course, for the asking*, though the statements on which she asks it may be afterward proven to be a tissue of falsehoods.

The real basis and reason of this doctrine is not difficult to state. *It is the common-law disability of the wife to contract.*

This constitutes the *differentia*, distinguishing the basis and reason of permanent alimony from that of temporary alimony. Take away this, and there is no reason for the latter. *Bank* v. *Williams*, 46 Miss. 618 ; *Porter* v. *Porter*, 41 Miss. 116.

At common law, or in equity originally, the wife could only (except in divorce and restitution cases) sue the husband by a *next friend*, who was responsible for the costs and expenses of the litigation. There is no wrong without a remedy—and the common-law wife, being abandoned by her husband, having no separate estate of her own, being unable to get a "next friend" to assume the burden and expense of her suit and her maintenance *pendente lite, and being legally disabled to contract herself*, would be hopelessly precluded from asserting her rights, were it not for this doctrine of *pendente lite* alimony, which in this one instance alone in the whole field of legal procedure assumes the risk of falsehood and imposition on the wife's part, and compels the husband to furnish the wife means to carry on her suit (frivolous and

unfounded though it may be) and maintenance during its pendency.

2. But suppose we are wrong in the foregoing, and that alimony *pendente lite* still exists in Mississippi as elsewhere in common-law countries.

We submit that alimony *pendente lite* will only be allowed in *divorce* and *nullity* cases, or in kindred cases where from the nature of the allegations it would be *" legally improper* for the parties to live in matrimonial cohabitation, whatever is to be the result of the suit." 1 Bishop, Mar. and Div., § 801 ; 2 Ib. 384; *Ex parte Smith*, 34 Ala. 455 ; *Jeter* v. *Jeter*, 36 Ala. 404.

*Houston & Reynolds*, for the appellee.

1. Alimony, says *this* court, is a *vested* right due the wife from the husband on a proper case being made out. *Garland* v. *Garland*, 50 Miss. 710. Alimony *pendente lite* is properly made out and will be granted when the bill sets out that the parties are man and wife, that the husband has abandoned her and fails to support her, and that she is without means to prosecute her suit for alimony *permanent*, and the pecuniary condition of the husband is such as to enable him to pay alimony. *Porter* v. *Porter*, 41 Miss. 116.

This court further remarks that this allowance does not depend upon statutory authority, but is a power incident to the jurisdiction of a court of chancery, independent of any statute. It cannot be that §§ 1167 and 1168 of Campbell's Code do, or were ever designed to, take from wives, either seeking a divorce or *permanent* alimony, the right of recovering alimony *pendente lite* when impecunious. The right to maintenance from the husband of the wife and the right of the wife to alimony *permanent* and *pendente lite* existed before our statutes or our constitution. It was a right vested in the wife and recognized in equity, and was the creature of the growth of the equity system of England and enlarged upon in this country.

2. The next point made by counsel for appellant is that, "Alimony *pendente lite* can only be allowed in case of bill for *divorce* and *nullity* cases, or kindred cases where, from the nature of the

allegations it would be improper and illegal for the parties to live and cohabit together."

It would seem unnecessary for more to be said on this point than to simply refer to the adjudication of this exact question in the case of *Garland* v. *Garland,* 50 Miss. 694.

Campbell, C. J., delivered the opinion of the court.

It is settled in this State that a wife denied a support by her husband may bring her bill for alimony without seeking a divorce. *Garland* v. *Garland,* 50 Miss. 694, and *Dewees* v. *Dewees,* 55 Miss. 315. And as she is entitled to be maintained by her husband, no reason is perceived why she shall not be allowed alimony *pendente lite* and the means to maintain her suit when her bill shows a case entitling her to permanent alimony, and she is without the means of present support and unable to conduct her suit, rendered necessary by the refusal of her husband to maintain her.

Whatever the origin and foundation of the practice of the courts to make such allowance to the wife, it is not affected by the Code of 1880, which was not designed to supersede or abridge the equitable rights of married women, except as it may expressly provide.

The practice in granting temporary alimony is settled by *Porter* v. *Porter,* 41 Miss. 116.

*Affirmed.*