O’NIELL, J.
Defendant appeals from a judgment allowing plaintiff and her child $50 a month alimony during the pendency of her suit for separation from bed and board, on the ground of abandonment.
The pleas and defenses urged in response to the rule to show cause why alimony should not be allowed are repetitions of the pleas and defenses that were urged against the suit for separation, viz.: (1) That the courts of Louisiana have not jurisdiction of this case; (2) that plaintiff’s petition does not disclose a.cause or right of action; (3) that defendant is not the individual who married plaintiff, in Indianapolis, Ind., on the 9th of October, 1911, as alleged in her petition; and (4) that the fact was adjudged and decreed by the circuit court of Marion county, Ind., in a suit filed by defendant against plaintiff in May, 1917, and is now res judicata, that he is not the Edwin L. Clark who married plaintiff in Indianapolis, Ind., on th'e 9th of October, 1911.
Plaintiff, whose name was Christine Angelica La Follette, was married to Edwin L. Clark, in Indianapolis, Ind., on the 9th of October, 1911. A boy was born of the marriage on the 2d of August, 1914, and bears the name Courtney Arvid Clark. Edwin.L. Clark and plaintiff, as husband and wife, occupied apartments at a prominent hotel in Indianapolis for a period of five months from and after the date of their marriage. Then they went to Tampa, Fla., and afterwards to the home of plaintiff’s mother, the former home of plaintiff, at Siloam Springs, Ark. Plaintiff’s husband abandoned her and the child at Siloam Springs, and went away from the town, in November, 1914. Soon afterward, the defendant in this suit, bearing the name L. Edward Clark, appeared in New Orleans, where he has engaged in business and has established his residence and domicile.
About five months after plaintiff’s husband had left Siloam Springs, she was informed by a letter from one of L. Edward Clark’s as-. sociates in business in New Orleans that her *743 husband, was in this city. Lack oí funds and illness of her child delayed her coming to New Orleans until February, 1918. Two weeks after her arrival here, she instituted a prosecution against defendant L. Edward Clark, for neglecting and failing to support her and the child. His defense was that he was not the individual who had married plaintiff and was not the father of her child, and, on that ground, he has persisted in his refusal to live with plaintiff or to provide for the support of her or the child.
[1] The plea to the jurisdiction and the exception of no cause of action, being founded upon one and the same argument, have been argued as one; and, for the purpose of deciding them, we have to assume that defendant is the individual to whom plaintiff was married in Indianapolis on the 9th of October, 1911.' Both pleas are founded upon the fact that the abandonment occurred not in Louisiana, but in Arkansas, and that the spbuses had not then and had never had a matrimonial domicile in Louisiana. There is no allegation nor proof as to where the matrimonial domicile was when plaintiff’s husband abandoned her at Siloam Springs, Ark. But plaintiff’s right of action in a Louisiana court, or the jurisdiction of a Louisiana court to entertain her suit, for separation from bed and board on the ground of abandonment, does not depend upon her having had either a separate or a matrimonial domicile in Louisiana before or at the time her husband abandoned her in Arkansas, since he has established a domicile in Louisiana and persists in his refusal to live with plaintiff or to receive her at his residence in this state. Article 120 of the Civil Code declares that a wife is bound to live with her husband and to follow him wherever he chooses to reside, and that the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, according to his means and condition. Article 143 declares that the abandonment that gives cause for a judgment of separation from bed and board consists, not in the withdrawal of one of the spouses from the common dwelling, but in his or her persistent refusal to return to and live with the other spouse; and article 145 provides the method of putting the offending spouse in default and of proving his or her persistent refusal to return to or live with the other spouse.
The question presented by the plea to the jurisdiction and the exception of no cause of action wás decided twice lately, contrary to defendant’s contention. In Stevens v. Allen, 139 La. 658, 71 South. 936, L. R. A. 1916E, 1115, it was held that the husband had a right of action in the courts of Louisiana, and that the courts of this state had jurisdiction of his suit, for separation from bed and board on the ground of abandonment, notwithstanding the marriage was contracted in another state, the wife had never lived in Louisiana, and her abandonment of her husband consisted in her refusal to accompany or follow him to Louisiana. The jurisdiction of the court in Louisiana rested upon the fact that the husband had had his domicile in this state before his marriage and had never acquired another domicile. Applying the rule that the wife could not, without abandonment or other misconduct on the part of her husband, have or acquire a domicile other than his, the domicile of the defendant wife was declared to be that of the plaintiff husband, in Louisiana. Therefore, having jurisdiction ratione personae, the courts of Louisiana had jurisdiction of the matrimonial status of the defendant. The refusal of the wife to follow her husband to his domicile in -Louisiana and live with him here constituted an abandonment by the wife of the husband in Louisiana, and gave him a right of action for separation from bed and board, under the laws of this state.
*745 In George v. George, 143 La. 1032, 79 South. 832, the ruling was that the wife could acquire a domicile other than that of her husband when he had abandoned her, or when his misconduct compelled her to leave him; that, when the wife had so acquired a separate domicile, there was no matrimonial domicile, the courts of which place would have exclusive jurisdiction over the matrimonial status; and that, in such case, the court having jurisdiction over the person of the defendant, whether husband or wife, had authority to grant a divorce or separation from bed and board.
The: argument of counsel for defendant is that a Louisiana court has not jurisdiction of a'suit for divorce, or for separation from bed and board, unless the matrimonial domicile was in this state before or at the time of the offense complained of. Of the many decisions cited to support the argument, there is not one that denies the authority of a Louisiana court to render a judgment of divorce, or of separation from bed and board, against a defendant who is domiciled in this state, whether husband or wife, even though there be no matrimonial domicile in this state. In every case to which counsel for defendant refer us, it was the husband who came into Louisiana and, having acquired a domicile here, sued his wife' for a divorce, or for separation from bed and board, for a cause that had occurred in another state, before he had acquired a domicile in Louisiana; and in every such ease, of course, it was held that the husband could not, by substituted process, subject his wife to the jurisdiction of a court in Louisiana, where there was neither a matrimonial domicile nor separate domicile of the wife. The aphorism that the domicile of the husband is that of the wife does not express the law accurately. What is meant by the maxim is that, if there be a matrimonial domicile, it is also the domicile of the wife; for, if. there be no matrimonial domicile, the husband and wife may have separate domiciles, or be subject each to a separate jurisdiction, ratione personae. A husband who has acquired a domicile in Louisiana, and who, without just cause, refuses to live with his wife in this state, cannot contend in good grace that he has a matrimonial domicile elsewhere, of which the courts alone should have jurisdiction of a suit against him for divorce, or for separation from bed and board.
[2] Finding no merit in defendant’s plea to the jurisdiction, or in his exception of no cause or right of action, we take up the only question to be decided on the merits of the case; that is, whether the defendant, bearing the name L. Edward Clark, is the Edwin L. Clark to whom plaintiff was married in Indianapolis, Ind., on the 9th of October, 1911. She, of course, testified that he was the individual to whom she was married in Indianapolis; and it is not possible that she was mistaken in identifying the defendant, who was in court. Her testimony was corroborated by that of a witness who came from Siloam Springs, Ark., and upon whose veracity no reflection has been cast. He testified that he had lived at Siloam Springs about 30 years; had known plaintiff 16 or 17 years; knew her child from infancy, and identified him in the courtroom; knew plaintiff’s husband during a period of 3% weeks when the husband and wife and child lived in plaintiff’s mother’s home at Siloam Springs. The witness identified the defendant in the courtroom as the same Mr. Clark whom he had known as the husband of plaintiff, father of her child, living with them, in her mother’s home at Siloam Springs. The witness said that he had visited at the house; that, when he was passing there one day, Mr. Clark called him in “to see his fine boy,” and showed him plaintiff’s child, the same child who was in court, attending the trial. The witness testified that, on another occasion, he was in the room with Mr. Clark, in plaintiff’s mother’s home, *747 and, when plaintiff came into the room, Mr. Clark said he presumed the witness had known her before he (Clark) had met her.
Plaintiff testified that she had gone from Gulfport, Miss., to Indianapolis, to marry Mr. Clark; and, in corroboration of her testimony, she produced and filed in evidence several letters that he had written her, on the letter head of the Imperial Hotel, in Indianapolis, where he was stopping for several days before the 9th of October, 1911, and where he and she stayed for five months after the marriage. The postmarks on the envelopes show that the letters were mailed from Indianapolis a few days before the marriage. She testified that Mr. Clark wired a bank in Gulfport to honor her draft for $75, to pay the expense of her trip to Indianapolis. She could not remember the date of the telegram, but was sure it was on the last Saturday previous to the 9th of October, 1911, and she gave the name of the bank and the name of the cashier who honored her draft on Mr. Clark. She also produced and filed in evidence a souvenir post card, bearing a lithograph picture of the Imperial Hotel in Indianapolis, on which card, addressed to “Mr. & Mrs. E. L. Clark, Tampa, Florida, 707 La Fayette St.,” the proprietor of the Imperial Hotel had written that he was sending by express a trunk which they (Mr. and Mrs. E. L. Clark) had left at the hotel. The proprietor of the hotel, having appeared as a witness for the defendant in this case, on cross-examination, identified the post card and remembered the circumstances of writing it and the occasion to which the writing referred.
Many important statements made by plaintiff in her testimony in this case could have been disproven very easily, if they were not true, and there is not a word of contradiction of anything she said.
Accompanying a certified copy of her marriage certificate, she introduced in evidence ■the applications for the marriage license, one application being signed by Edwin Lincoln Clark, and the other by Christine Angelica La Follette, and both being sworn to' before the clerk of the circuit court of Marion county, Ind., in Indianapolis, on the 9th of October, 1911. To acquire the marriage license, under the law of Indiana, each party had to fill out and sign under oath a printed form or application blank. In the application signed by Edwin Lincoln Clark, he declared under oath that his full name was Edwin Lincoln Clark; that he was born in Lincoln county, Minn., on December 11, 1873; that he resided in Indianapolis; that his occupation was that of stockbroker; that his father’s name was Benjamin Lafayette Clark, who was born in Lincoln county, Minn., and was a farmer; that applicant’s mother was dead; that her name was Viola Clark, born in Lincoln county, Minn.; that applicant had been married twice; and that both marriages were dissolved by judgments of divorce, the first in July, 1906, and the second in July, 1911.
The only evidence introduced by the defendant, in support of his denial that it was he who married plaintiff in Indianapolis on the 9th of October, 1911, was the testimony of the probate judge who performed the ceremony and that of the proprietor of the Imperial Hotel. The probate judge testified that the couple whose marriage ceremony he performed on October 9, 1911 were In his office only about five minutes, and that he was unable to identify defendant, or say whether he was or was not the man who had represented himself as Edwin L. Clark on that occasion. The proprietor of the Imperial Hotel testified that he assisted Edwin L. Clark in procuring the marriage license in Indianapolis, took the couple to the judge’s ■ office in his automobile, and served and signed as a witness to the marriage. He testified that he had seen Edwin L. Clark at the hotel during several days before the marriage, and had seen the couple about the *749 hotel during the five months after. He testified that the defendant in this case resembled the Edwin L. Clark who had married plaintiff, but that he could not positively identify the man.
The probate judge and the proprietor of the Imperial Hotel both testified that they had identified the plaintiff as soon as she had spoken to them, when they had stepped off the train in New Orleans; and, from that circumstance, counsel for defendant argue that the probate judge and the proprietor of the hotel would surely have been able to identify the defendant if he were the individual to whom plaintiff was married by the judge in presence of the hotel proprietor. We do not think so. With due respect for his honor the probate judge and for the proprietor of the Imperial Hotel, it may be that the bride attracted more attention than did the groom. At any rate, the probate judge and the hotel proprietor came from Indianapolis at defendant’s expense, and their testimony was introduced by him. Their doubt about his identity is rather unfavorable than favorable to his defense, for it leaves no doubt that he resembles the man to whom plaintiff was married in Indianapolis on the 9th of October, 1911. If that resemblance is only a coincidence, it is indeed an astounding one, in view of the many other corroborative facts and circumstances that would then be also mere coincidences.
Our opinion is that defendant’s denial that he is the individual who married plaintiff in Indianapolis on the 9th of October, 1911, is as flimsy a defense as was ever submitted to a court of justice. Though present in court during the trial of this rule he did not condescend to take the witness stand and verify his denial on oath. No reason is given for his failure to inform the court where he was when the man who resembled him and bore his name married plaintiff in Indianapolis, or during the several days before the marriage, when the man who resembled him and bore his name, at the Imperial Hotel in Indianapolis, was writing to plaintiff in Gulfport, Miss., and wiring a bank there, authorizing her to draw on him. No reason is given for plaintiff’s failure to prove an alibi, during the five months when the man who resembled him and bore his name and had married plaintiff was living with her at the Imperial Hotel in Indianapolis, or during the time when plaintiff and her husband and child were staying at her mother’s home at Siloam Springs, Ark., or when they were in Tampa, Fla., or at any time during the three years in which plaintiff has stated the whereabouts of herself and husband, who resembles defendant and bore his name. If any fact or detail sworn to by Edwin Lincoln Clark, in describing himself and his parents, in his application for a marriage license, was not true of the defendant and his parents, he should have exposed the fact, on the trial of this rule. We assume, therefore, that the description which the man who resembled defendant gave of himself and his parents, in his application for a marriage license, fits the defendant, L. Edward Clark, and his parents. Without any evidence or suggestion that any one except the defendant, L. Edward Clark, possessed all of the information that was given about him in the application for the marriage license, we have no reason to doubt that the Edwin Lincoln Clark who wrote and signed the application under oath was the defendant, L. Edward Clark, himself, writing about himself.
Whatever may develop, or may have developed, on the trial of the merits of the suit for a separation from bed and board, the evidence taken on the trial of this rule convirices us beyond all doubt that defendant is the individual who married plaintiff in Indianapolis on the 9th of October, 1911.
[3] Regarding defendant’s plea of res judi *751 cata, our opinion is that the judgment rendered by the circuit court of Marion county, Ind., declaring that the defendant here was not the individual who married plaintiff in Indianapolis on October 9, 1911, has no force or effect whatever upon the plaintiff here or upon her matrimonial status, because she was not cited and was not subject to the jurisdiction of the court that rendered the judgment. Defendant’s counsel argue that the only object of the suit was to reform the marriage record, and that the circuit court of the county in which the marriage had been contracted and was recorded had jurisdiction of the res. But to reform the record was not the object of the suit, nor does the judgment purport to reform the record, or to have any effect whatever upon the marriage contract or the record of it, or upon the matrimonial status of either party to the contract. The only relief prayed for or granted was a judgment declaring that the plaintiff in that suit (defendant in this suit) was not the individual who married Christine Angelica La Follette, alias Christine Angelica dark, on the 9th of October, 1911. A citation addressed to Christine Angelica La Follette, alias Christine Angelica Clark, was published for three consecutive weeks in a newspaper in Indianapolis, as required by the law of Indiana for citation by substituted process in cases where that method of citation is sufficient. No one answered the citation or made any defense or appearance in the case, and a judgment was rendered in favor of the plaintiff by default. Whatever satisfaction the judgment may be to him, it cannot have— and does not purport to have — any effect upon the plaintiff here, or upon her matrimonial status. No doubt Mr. Clark could have obtained a similar judgment with regard to any and every marriage contract on record in Marion county, Ind., to which he was not a party.
[4] Counsel for defendant here argue that, under the full faith and credit clauses of the federal Constitution, we cannot question the correctness of the finding of the Indiana court that that court had jurisdiction of the case in which the judgment was rendered. The argument is not in accord with the ruling of the Supreme Court of Indiana in Sowders v. Edmunds, 76 Ind'. 123, viz.:
“A valid personal judgment cannot be rendered in a case where the notice to the defendant is by publication only, and there has been no appearance by or on behalf of the defendant.”
The argument is also contrary to the doctrine of the leading case on the subject, Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, and the ruling in Thompson v. Whitman, 85 U. S. (18 Wall.) 457, 21 L. Ed. 897. Our conclusion is that defendant’s plea of res judicata is not well founded.
Appellant does not complain of the amount of alimony allowed, nor has the appellee prayed for an amendment of the judgment appealed from.
The judgment is affirmed, at appellant’s cost.
See concurring opinion of PROVOSTY, J., 82 South. 879.