(84 South. 202)

No. 23683.

CLARK v. CLARK.

(March 1, 1920. Rehearing Denied April 5, 1920.)

*(Syllabus by Editorial Staff.)*

DIVORCE ☞124—SEPARATION FROM BED AND BOARD; EVIDENCE HELD TO SHOW THAT DEFENDANT WAS PERSON WHO MARRIED PLAINTIFF.

In a suit for separation from bed and board, and for alimony and the custody of minor child, the weight of evidence *held* to show that defendant was the man who was married to plaintiff, though he claimed a different given name and denied the marriage.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Suit for separation from bed and board by Mrs. Christine A. La Follette Clark against Edwin L. Clark. Judgment for plaintiff, and defendant appeals. Affirmed.

Hubert M. Ansley and E. A. O'Sullivan, both of New Orleans, and L. Edward Clark, for appellant.

Claude L. Johnson, of New Orleans, for appellee.

SOMMERVILLE, J. Plaintiff has sued the defendant for a separation from bed and board on the ground of abandonment, and has asked to be awarded the custody of her minor child, Courtney Avid Clark. Defendant filed a plea to the jurisdiction of the court, and, if overruled, pleaded that the petition contained no cause of action, and he filed a plea of res judicata.

Subsequently, in the same proceeding, plaintiff filed a rule for alimony, to which defendant filed the same exceptions that he had filed to the original petition. He then answered, and there was judgment making the rule absolute, ordering him to pay alimony to plaintiff. On appeal, the judgment on that rule was affirmed. 145 La. 740, 82 South. 875.

In disposing of the rule for alimony, the court reviewed all of the exceptions referred to, and overruled same. For the reasons given in that opinion, these same exceptions filed to the original petition in the case are now overruled, and that opinion is made part of this opinion.

Plaintiff alleged in her petition that she and the defendant were married in the city of Indianapolis, Ind., on October 9, 1911, and that there was a child born of the union, named Courtney Avid Clark, who was born in Chattanooga, Tenn., August 2, 1914; also that defendant had abandoned her and their child, and he was now living in the city of New Orleans. She asked for a separation from bed and board, and that she be awarded custody of her minor child. Defendant answered, denying that his name was Edwin L. Clark, and alleged that his name was L. Edward Clark; he further denied that he was married to the plaintiff, and reconvening, alleged that while there was a marriage ceremony in Indianapolis on the date mentioned by plaintiff, that he, the defendant, was not a party thereto; that said marriage ceremony was a conspiracy entered into by plaintiff and another person, who represented himself as this defendant, and that he, defendant, was not a party to said marriage, and knew nothing whatever about it; and that said marriage, in so far as he was concerned, should be annulled, and that he be declared to be not the husband of the plaintiff in this cause.

There was judgment in favor of plaintiff, as prayed for, and defendant has appealed.

This is a much-litigated case. It has been before the court on several prior occasions, presenting different phases as the suit progressed. See State v. Clark, 143 La. 481, 78 South. 742; State v. Clark, 144 La. 328, 80 South. 578; Clark v. Clark, 145 La. 740, 82 South. 875.

Plaintiff testified, on the trial of the cause,

as a witness on her own behalf, that she and the defendant were remarried at the time indicated; and defendant, appearing as a witness on his behalf, testified that he was not married to plaintiff, that he was not Edwin L. Clark, that his name was L. Edward Clark, and that he was not the father of the child of plaintiff.

Defendant introduced in evidence a copy of an application for a marriage license, signed by plaintiff and Edwin L. Clark, on the day and date mentioned by plaintiff in her petition, and also a copy of a marriage certificate of the same date between the parties. He also introduced, as a witness, Judge Frank B. Ross, of Indianapolis, Ind., who was the probate judge there at the date of the alleged marriage, and who performed the ceremony of marriage at that time. He also offered in evidence the testimony of Emmet Smith, of the same place, who was a witness to the marriage ceremony referred to. The object of this evidence was clearly to show that defendant was not the Edwin L. Clark who had been married to plaintiff at the time indicated. In this attempt, defendant failed; for both of the witnesses were uncertain of the identification of the party who was married to the plaintiff on the occasion referred to. Judge Ross testified that he had forgotten the matter and the parties altogether; that he had not known them before he performed the ceremony; that, on seeing the plaintiff in New Orleans after his arrival, he recognized her as being one of the parties to said marriage; but with reference to the defendant, he testified:

"Q. Do you recall, in any way, the man whom you did marry to her (referring to plaintiff)?"

And he answered:

"To say that I recall, I would say no; I do not recall him."
"I would not attempt to place any degree of identification upon him whatever."

"No, sir; I don't identify him [defendant] as being the man I married, or as not being the man I married."

The witness Smith was equally uncertain. He witnessed the marriage ceremony; and knew the parties thereto, as they resided in the hotel, of which he was proprietor, for some months after the marriage. Mr. Clark had boarded in the hotel for some little time before the marriage. Mr. Smith said, in answer to questions propounded to him:

"The only thing I can say would be that he (referring to defendant) resembled the man; he may be the same man and he may not be. There is some things that look like the same man, and other things, as I remember them, don't, and that do not fix him firmly in my mind as being the same man."
"He resembles him in appearance generally, and he might be the same man, and he might not be."
"It has been over six years ago, and I have seen a great many faces that looked very much alike, and I could not positively identify him as being the same man."
"No, I am not. He might be, and he might not be. There is a similarity that looks alike, and I have seen a great many people who look alike."

There is nothing positive or satisfactory in the testimony of these two witnesses. The witness Smith further testified that, when Mr. and Mrs. Clark left his hotel, they left a trunk behind them which was very shortly afterwards forwarded by him to them in Tampa, Fla., where this plaintiff and defendant were actually living as husband and wife at the time. Smith was able to recall this incident when there was produced a postal card, which he had written to Mr. and Mrs. Edwin L. Clark, at Tampa, Fla.

Defendant testified that he was in New Orleans at the time of the alleged marriage in Indianapolis, and to support this alibi he offered the testimony of his aunt and uncle, Mr. and Mrs. McGee, of Magnolia, Miss., who testified that they had seen their nephew, L. Edward Clark, on a train coming from

Jackson to New Orleans, on or about October 8 or 9, 1911. These witnesses gave no particular reason for remembering the date with any degree of accuracy for so long a time, and their evidence cannot be received as definitely fixing any date when they saw defendant on the train referred to. Defendant also offered the testimony of Miss Stell Holcomb, of San Diego, Cal., who was in training as a nurse in the city of New Orleans in the year 1911. She testified that defendant called upon her during the month of October, 1911. She said:

"I did meet L. Edward Clark in October, 1911, at the Charity Hospital in New Orleans, La., and to the best of my knowledge it was about the 5th of October. I remember on that occasion, when he called upon me, we sat out on the lawn. Four or five days later Mr. Clark returned to New Orleans, and I took dinner with him at the Hotel Grunewald."

But this witness did not testify that defendant was in New Orleans on October 9, 1911, the date of the marriage alleged in plaintiff's petition. Miss Holcomb was the only witness produced by defendant to show that he was in New Orleans on or about October 9, 1911. He said that he stopped at a hotel at that time, but that he did not register. That is hardly probable.

Another witness, Abe Tribble, a colored man, and general house man at the hotel where plaintiff and her husband stopped, in Indianapolis, in 1911, testified that while defendant looked like the man who was married to plaintiff and lived with her as her husband, he was not that person. This is the most positive testimony offered by defendant as to his identification. But it was a long time between the date of the alleged marriage and that on which Abe saw the defendant in this case in 1918, and his testimony cannot be accepted as conclusive, in view of the contradictory testimony introduced by plaintiff.

Plaintiff's testimony, in support of the allegations made in her petition, is very clear and direct to the effect that she and defendant were married in Indianapolis at the time stated. She testified that she and defendant had been living together as husband and wife under a civil marriage contract which they had entered into prior to 1911, and at the time of their second marriage and prior thereto, they had been living in Gulfport, Miss. She testified that defendant left Gulfport for Indianapolis in October, 1911, and had sent for her to come to him for the purpose of being married there. In this she is corroborated by the testimony of J. A. Leathers, a lawyer, and William Clark, a merchant, both of Gulfport, Miss., who testified that they both knew the parties, plaintiff and defendant, as husband and wife, and that defendant went to Indianapolis in the early part of October, 1911, and that they both received letters from him, dated at that place on October 15, 1911, which contained "a statement of fact," written by defendant, in which he stated that he had been married to the plaintiff about that time in Indianapolis. Defendant denied having written these letters and statement, but the witnesses were quite confident that they recognized the handwriting of defendant and that the letters and statement had been received by them through the mail. There was therein contained references to his business connections in Gulfport, with which the witnesses were familiar, and also references to plaintiff as his wife.

The testimony of plaintiff is further verified by several letters offered in evidence which are in the transcript in their original forms, which were regularly addressed to Mrs. Lincoln Clark, and signed by Edwin, in which defendant repeatedly referred to plaintiff as his wife, and to the child Courtney as his child. Defendant also denied having written these letters; but they were all evidently written by the same person, and the

conclusion is irresistible that defendant wrote them.

In ,writing to Mr. W. E. Clark on October 15, 1911, from Indianapolis, Ind., defendant wrote in part as follows:

"I was more than pleased to find, upon my wife's arrival here, that you had shown the mettle existent in the blood of the Clarks, enough to stand by a man that loved a woman, and risk even his liberty for her," etc.

Joseph C. Eggart and H. S. Gerson, business associates of defendant in New Orleans, testified that, in the fall of 1914, about the time of the birth of the child Courtney, defendant told them that his wife was expecting to be delivered of a child at that time, evidently referring to the plaintiff in this cause.

Defendant admitted, on a rigid cross-examination, that he was present at the birth of the child Courtney in Chattanooga in 1914.

Chris Real, a resident of Siloam Springs, Ark., the home of plaintiff's mother, and the temporary home of plaintiff at the time, testified that the plaintiff and defendant were there present in Siloam Springs and represented themselves as having been married to one another, and that defendant referred to the child Courtney as his child. He testified in part as follows:

"I was passing the house where they were living; he was on the front porch with the little boy on his arm, and he called me in to see his fine boy, and he remarked that I was not the only one who had a fine boy; I have a little fellow about the same age."

The preponderance of the evidence supports the allegations contained in plaintiff's petition to the effect that Edwin L. Clark, the present defendant, and L. Edward Clark, as defendant chooses to call himself at this time, are one and the same person, and that this plaintiff and defendant were married in Indianapolis, Ind., on October 9, 1911, and that there was born of this union the child Courtney Avid Clark, at Chattanooga, Tenn., on August 2, 1914, and that defendant abandoned his wife in November, 1914, in Siloam Springs, Ark., and that plaintiff therefore is entitled to a separation from defendant on the ground of abandonment.

The judgment appealed from is affirmed.