CRAWFORD *v.* CRAWFORD.

(Division A. Oct. 27, 1930.)

[130 So. 688. No. 28898.]

J. H. Berryman, of Crystal Springs, for appellant.

J. A. Smylie, of Crystal Springs, for appellee.

Argued orally by **J. H. Berryman**, and **W. S. Henley**, for appellant and by **J. A. Smylie**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

This case arose in the chancery court on the petition of Amanda Crawford, the appellant, to enforce the pay-

ment of a decree for alimony theretofore rendered, and on citation for contempt against Robert Crawford, the appellee, together with the petition to set aside certain conveyances executed by him.

. Robert Crawford appeared and filed a plea to the effect that at the time and prior to the time the decree for alimony was rendered, a valid decree of divorce had been entered by a court of competent jurisdiction dissolving the bonds of matrimony between the appellant, Amanda Crawford, and him; that the decree for divorce was res adjudicata to the subsequent suit for alimony; and that the decree for alimony was consequently void for want of jurisdiction. The court below disposed of the case on this plea, holding that the decree for alimony so rendered was void, and discharged the appellee; and from this decree, the appellant, Amanda Crawford, prosecutes this appeal.

The record discloses the following facts: On September 11, 1919, Crawford filed his bill for divorce against Amanda Crawford on the ground of habitual drunkenness and alleged that the appellant was an inmate of the State Insane Hospital. Process was issued to Hinds county, and was returned with the certificate of the superintendent of the State Hospital for the insane attached, in accordance with section 3141, Hemingway's Code 1927, section 3930, Code 1906. At the March, 1920, term, the chancery court of Copiah county rendered its decree granting an absolute divorce to the appellee, Robert Crawford, and dissolving the bonds of matrimony existing between the parties. There was no appearance by the wife, Amanda, in the divorce proceedings, nor was she in any way represented so far as the record shows.

Subsequent to the decree of divorce, on August 28, 1920, Amanda filed her bill against the appellee, Robert Crawford, alleging that the divorce decree theretofore granted was void, that the parties had been married about fifteen years and had lived together until she was incarcerated in the insane hospital at Jackson, four or

five years ago. She also alleged that by their joint earnings they had acquired real and personal property to the value of about five thousand dollars. She denied that she was insane, and alleged that no process had been served upon her and that she had had no notice of the divorce suit. She further alleged that she was entitled to one-half of the property, and described it, and prayed the court to decree her a one-half interest in the property, or, in the alternative, alimony. She denied the charge of habitual drunkenness.

The defendant's or appellee's answer was a denial of the material allegations of the bill, and could in no wise be construed to be a plea of res adjudicata. The record shows that the case was taken under advisement by the chancellor, and that on October 12, 1921, a decree was rendered allowing seventy-two dollars alimony to be paid in cash, and twelve dollars a month thereafter until further order of the court. The petition for enforcement of this decree, filed in 1920, alleged that no part of this sum had been paid.

This appeal presents squarely one question: Has the chancery court the jurisdiction and power to render a decree for alimony to a quondam wife subsequent to an absolute decree of divorce granted the husband? The last sentence of section 1480, Hemingway's Code 1927, section 1670, Code 1906, is in this language: "In all cases of divorce from the bonds of matrimony, the marital rights shall cease with the decree." Section 1483, Hemingway's Code 1927, section 1673, Code 1906, is in this language: "When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody, and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife, or any allowance to be made to her, and may, if need be, require sureties for the payment of the sum so allowed; and the

court may afterward, on petition, change the decree, and make from time to time such new decrees as the case may require.''

The language quoted from section 1480, supra, has, in substance, appeared in our Codes since 1857. It was early contended that the statute precluded an allowance to the wife, or separate maintenance or alimony without a decree of divorce; and this matter was thoroughly considered by our courts and decided adverse to the contention in the case of Garland v. Garland, 50 Miss. 694; Verner v. Verner, 62 Miss. 260; McFarland v. McFarland, 64 Miss. 449, 1 So. 508, 509; Scott v. Scott, 73 Miss. 575, 19 So. 589, by which cases, we think, it is now thoroughly settled in Mississippi that alimony may be decreed upon a bill therefor by the wife in which no divorce is sought.

Chancellor SCOTT in the case of Shotwell v. Shotwell, Smedes & M. Ch. at page 51, held, after a discussion of English and American cases, that the powers of the chancery court were commensurate with those of the spiritual courts of England, and that a separate suit might be maintained for alimony subsequent to a decree for a divorce obtained at the instance of the wife.

The high court of errors and appeals, in the case of Lawson v. Shotwell, 27 Miss. 630, speaking through Mr. Justice FISHER, on appeal of that case, had this to say with reference to the power and jurisdiction of the chancery court to grant alimony subsequent to a decree of divorce: ''We do not intend to intimate that there may not be cases in which an original bill, after a decree for a divorce could not be maintained for alimony, but only that the present bill shows no sufficient reason for not taking, or at least asking, such a decree from the circuit court, touching the matters now in litigation. A good reason must be alleged why the alimony was not at the proper time allowed. What will be a good reason, must depend upon the facts of the case when presented.'' It was the opinion of the court that no good reason was shown in that case for the failure of the wife to demand

alimony at the time she obtained her decree for divorce against her husband.

In 1874, the case of Garland v. Garland was before the court, and the court anonunced this general rule therein, that a bill for maintenance without asking for a divorce could not be maintained in England, yet the English courts have seized, on slight pretext, jurisdiction with a view to her protection and support. And the holding of the court upon the question there involved was that there was nothing in the statute of 1857 to prevent the courts from requiring the husband to provide separate maintenance for the wife other than exclusively in proceedings for divorce. In the case of Garland v. Garland, there was no effort to dissolve the bonds of matrimony, but simply a separate bill for maintenance. The court approved the Shotwell case, supra, saying: "In Lawson v. Shotwell, 27 Miss. 630, the appellant, while she was Mary E. H. Shotwell, filed her bill against her then husband for a divorce, which was granted. No decree was asked or made for alimony. Subsequently, the wife filed supplemental and amended bills, seeking an allowance for support out of the husband's property, and to obtain restitution of property which she brought into the marriage. There was a demurrer to these bills, which was sustained, and the bills dismissed. This action of the court below was sustained on error. Referring to the claim for alimony, the court say: 'We do not intend to intimate that there may not be cases in which an original bill, after a decree for a divorce, could not be maintained for alimony; but only that the present bill shows no sufficient reason for not taking, or at least asking, such a decree from the circuit court, touching the matters now in litigation. A good reason must be alleged why the alimony was not at the proper time allowed.' And then, as to the restitution of the wife's property, it is said, 'this was a matter for the circuit court to adjudicate, and no good reason having been shown why it was not acted on, the bill cannot, in this respect either, be sustained.' "

In the Garland case, the statutes were called to the attention of the court. It is said, however, that the Shotwell opinion was based upon section 7, at page 496 of Hutchinson's Code, in reference to alimony, which is in this language: "When a divorce shall be decreed on account of the parties being within the prohibited degrees, or for the cause of adultery, or extreme cruelty, the court shall and may, in every case, take such order, touching the care and maintenance of the children of that marriage, and also touching the maintenance and alimony of the wife, or any allowance to be made to her, and if any, the security to be given for the same, as from the circumstances of the parties and nature of the case, may be fit, equitable, and just." Article 5, however, on page 497, of the same code, in force February 22, 1840, provides that: "All decrees rendered or hereafter to be rendered in the several courts of this state, dissolving bonds of matrimony between individuals, as shall be final and conclusive, as fully as though the same had been confirmed by act of the legislature; any law, usage, or custom to the contrary notwithstanding."

In 1844, there were divorces a mensa et thoro as well as divorces a vinculo. The language "marital rights shall cease with the decree" means no more than that the divorce is absolute; and that was the meaning of the statute as to a divorce a vinculo under Hutchinson's Code since 1840, at and prior to the time of the rendition of the opinion in the Lawson v. Shotwell case. So we are of opinion, without recourse to outside authority, that the rule is that if good reason be shown for not presenting the claim for alimony at the time the decree of divorce is taken, which is the proper time under the general rule to interpose such a claim, that the decree of divorce under such circumstances is not res adjudicata. Appellant's bill for alimony alleged good reasons. The effect of her allegation is that while the divorce case was heard in Copiah county, the place of her residence, she was incarcerated in the hospital for the insane in Hinds county.

The divorce proceeding was ex parte; there had been only constructive process upon her, as allowed by the statute, and the superintendent of that institution had certified that she was incapable of responding to process. The quondam wife was being sued for divorce by her husband, the one upon whom most she had a right to lean in the time of her distress and incapacity. This is an exceptionally unusual case, and furnishes an excellent reason as was first decreed by the chancellor when he rendered a decree in her favor for alimony. We must assume that the chancellor had ample evidence to support his decree allowing the alimony from the decree itself.

It is alleged in one of the pleadings in this case that the wife had been incarcerated for four or five years in the insane hospital, and only a few months after the divorce was granted she was released and found herself forever stripped of everything and every vestige of right, according to the husband's contention, without her knowledge or consent, or without any voice being raised in her behalf so far as this record shows. Indeed, it is difficult to perceive how she could be guilty of habitual drunkenness while confined as a lunatic in the insane hospital. Where the proceeding is ex parte, and the process is constructive, many courts have held that a decree of divorce does not preclude a subsequent application for maintenance and alimony in a particular case where good reason is shown for the failure to interpose the claim for alimony at the time of the hearing of the divorce proceeding. No better reason could be assigned than is here given—that it was impossible for the woman to help herself in a case where she was deprived of her liberty by authority of the state at a time when she did not know, and presumptively could not know, anything, or legally do anything of her own volition.

We are of the opinion, therefore, that the decree of the chancellor allowing the wife alimony in this case subsequent to divorce is not void, she having proceeded promptly after having been discharged from the hospital;

and under the authorities in this state, the court has jurisdiction. For authorities in other jurisdictions, see Toncray v. Toncray, 123 Tenn. 476, 131 S. W. 977, 34 L. R. A. (N. S.) 1106, Ann. Cas. 1912C, 284; Clark v. Clark, 145 La. 740, 82 So. 875; 19 C. J., section 574, p. 248. It would be a profitless task to take up the authorities of other states which announce a contrary view, usually based upon statutes. There is authority contrary to this opinion, but we do not feel authorized or inclined to overrule or change the rule announced by our own court.

Reversed and remanded.