295 So.2d 766 (1974)
Thomas H. HUDSON
v.
STATE of Mississippi.
No. 47693.
Supreme Court of Mississippi.
June 4, 1974.
Binder, Lucas, Tharpe & Lohrmann, Jackson, Mounger & Mounger, Tylertown, for appellant.
A.F. Summer, Atty. Gen., by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
*767 PATTERSON, Justice for the court:
Thomas H. Hudson was convicted of the murder of Frank Butts by the Circuit Court of the First Judicial District of Hinds County and sentenced to life imprisonment in the state penitentiary. He appeals from this conviction and sentence. We reverse because of erroneous instructions obtained by the state.
Mrs. Grace Hudson obtained a divorce from the appellant on February 2, 1972. The decision of the trial court awarding the divorce was appealed to this Court by Thomas Hudson and was affirmed in October 1973.
While the divorce appeal was pending, Hudson went to the home of his ex-wife on August 25, 1972, equipped with a tape recorder, a camera and a pistol. The record reveals that he was attempting to obtain evidence against his ex-wife so that he could "get back into court on the child custody and the alimony."
In furtherance of this endeavor he secreted himself in the enclosed rear porch or patio of the home. The tape recorder was then activated with the hope that the conversation between his ex-wife and Frank Butts, who was having lunch with her, could be recorded. The recorder was on for some thirty or forty minutes while the conversation was attempted to be monitored. The tape cassette was introduced in evidence. The label thereon in Hudson's handwriting disclosed "August 25, Friday. I will attempt to record this in house while he is here."
The Court has heard the recording which contains a combination of birds singing, normal sounds of traffic, and culminates with an excited exclamation by Hudson when Butts and his ex-wife unexpectedly came into the patio area: "You are bringing this God damn SOB in front of my children  and married," followed by muffled reports of a gun firing. Butts was instantly killed. A subsequent examination of his body revealed death was caused by three gunshot wounds which entered his back.
Hudson testified that he fired in self-defense. His former wife testified to the contrary, stating that the appellant, when she and Butts came into the patio, told Butts that he was going to kill him. The evidence of the affray was therefore in direct conflict.

I.
Numerous assignments of error are urged for reversal. We think, however, all are without merit except those directed to the state's instructions and the competency of Mrs. Grace Hudson to testify against her former husband while an appeal was pending in the divorce suit.
The state obtained four instructions, two of which relate to formalities and upon which we do not comment. However, Instruction Nos. 2[1] and 3[2], require *768 reversal. With regard to Instruction No. 3 we note that it does not advise the jury to find support in the evidence for the hypotheses expressed in the instruction. These hypotheses are (1) that Hudson could not arm himself with a deadly weapon with the intent of using it to overcome the deceased by murdering him (2) and so remain the aggressor and (3) provoke a fatal difficulty and be heard to say that he acted in self-defense. The negative statements relating to self-defense are mere hypotheses since they are not supported by testimony. They invaded the fact-finding province of the jury to appellant's prejudice since his evidence on self-defense should have been considered by the jury, unfettered by unsupported assumptions.
This Court has repeatedly criticized such instructions, Craft v. State, 271 So.2d 735 (Miss. 1973), and the cases cited therein, though in Pitts v. State, 211 Miss. 268, 51 So.2d 448 (1951), an identical instruction was approved by this Court. Undoubtedly this case was relied upon by the state's attorney and the trial judge for the approval of the present instruction. However, the instruction has no present purpose, as we view it, other than to cagily erode the plea of self-defense by semantics in lieu of facts. We therefore overrule that portion of Pitts, supra, which approved a similar instruction, as well as other cases, if there be any, in conflict with this opinion.
The error of the instruction is that it is received by a jury with the trial court's approval and is designed to affect their fact-finding process since it could only convey the thought, expressed by it, that the appellant armed himself with a deadly weapon with the intention of overcoming the deceased, that he was the aggressor and provoked a fatal conflict when the only evidence to support such assumptions is that the appellant was armed. It may be true that the jury could reach the identical conclusions from all of the evidence; nevertheless this is their prerogative and not the court's.
The state, of course, has the burden of proof in a criminal case. The most logical purpose for injecting the unsupported negative hypotheses into the record, we think, would be to weigh the appellant's evidence with the burden of removing the inferences arising therefrom or to furnish argumentative matter for the state's closing summation, neither likelihood bearing the brand of a fair trial.
State's Instruction 2 is also erroneous. This instruction, after stating that malice aforethought is a necessary ingredient to murder, gives an obscure definition of "malice aforethought" and concludes with the phrase "unless the jury should believe from all the evidence in this case that the defendant was `legally excusable,'" meaning, we assume, that the appellant was legally justified in the homicide.
The taking of Butts' life could have been legally excusable under the present circumstances only by facts constituting self-defense. This plea, however, was virtually eliminated by the instruction commented upon in the preceding paragraphs. The jury was thus left to grope aimlessly with the problem of what constitutes a "legally excusable" homicide when the other instruction had advised that the appellant could not be heard to say that he acted in self-defense. From these instructions the jury had little alternative to the return of a guilty verdict. The self-defense instructions obtained by the defendant did not alleviate the situation since they were in hopeless conflict with the state's instruction cutting off self-defense. We conclude this instruction was also erroneous, requiring reversal.

ALL JUSTICES CONCUR IN THE FOREGOING OPINION.
The conclusions of a majority of the Court are stated by Justice Sugg on the assignment of error relating to the competency of Mrs. Grace Hudson, as a witness, to *769 testify against her former husband, the appellant, while an appeal was pending in the divorce action.

II.
SUGG, Justice, for the majority:
Appellant assigns as error the action of the trial court permitting his ex-wife, Mrs. Grace Hudson, to testify for the State. Appellant contends that his wife was not a competent witness against him because of the provisions of Miss Code Ann. § 13-1-5 (1972).[3]
Appellant and his wife were divorced at the time the homicide occurred. After Mrs. Hudson secured a divorce and other relief under a decree of the Chancery Court of the First Judicial District of Hinds County, Mr. Hudson appealed without supersedeas. The award of a divorce to Mrs. Hudson was affirmed on appeal, but the case was remanded for clarification of the decree of the trial court as to title to the home property of the parties. Hudson v. Hudson, 284 So.2d 299 (Miss. 1973). When Mrs. Hudson testified at the murder trial of appellant in February, 1973 her divorce decree had not been affirmed by this Court.
This is the second time appellant has presented his contention that his wife was not a competent witness to testify against him. It was first made in Hudson v. McAdory, 268 So.2d 916 (Miss. 1972) when he appealed from an adverse decision on his petition for a writ of habeas corpus binding him over without bail to await the action of the grand jury on a charge of murder.
We noted in Hudson v. McAdory, supra, that appellant had appealed his divorce case but the record did not show if the appeal was from the provisions of the decree dealing with alimony, child custody and support, or from the granting of a divorce. After the decision in Hudson v. McAdory, supra, appellant assigned as error the action of the trial court granting the divorce without permitting him to amend his answer to include the defense of recrimination and in subsequently limiting his proof based on the disallowance of the requested amendment. Hudson v. Hudson, supra, had not been decided when Mrs. Hudson testified at the hearing on appellant's petition for a writ of habeas corpus, but, although an appeal was pending, we stated:
Since the parties were divorced at the time of the homicide, the wife was competent to testify as to the acts of the husband. (Hudson v. McAdory, 268 So.2d at 923).
We feel that Miss. Code Ann. § 93-5-27 (1972), which provides that in all cases of divorce from the bonds of matrimony the marital rights shall cease with the decree, supports the position of the majority of the Court that Mrs. Hudson was a competent witness.
In Crawford v. Crawford, 158 Miss. 382, 130 So. 688 (1930) we held that the language "marital rights shall cease with the decree" in the divorce statute means only that the divorce is absolute. Thus, when Mrs. Hudson secured a divorce from her husband, the divorce was absolute. We recognize that he had a right to appeal from the decree of the trial *770 court, and that this Court, on appeal, could reverse as to the granting of a divorce. However, the appeal did not operate to restore the marital rights between the parties, pending appeal.
The parties were not husband and wife at the time of the homicide and at the time Mrs. Hudson appeared as a witness for the State against her ex-husband; therefore, appellant's contention that she was not a competent witness because of § 13-1-5 is without merit. If the divorce decree had been reversed by this Court, Mrs. Hudson could not have testified thereafter as a witness in the case because of the statute. Since the divorce decree was affirmed, she was a competent witness at all times, after the rendition of the decree by the trial court, as to events that occurred subsequent to the date of the decree.
Reversed and remanded.
All Justices concur in part I.
In Part II GILLESPIE, C.J., and SMITH, ROBERTSON and WALKER, JJ., concur.
PATTERSON, J., RODGERS, P.J., and INZER and BROOM, JJ., dissent.
PATTERSON, Justice (dissenting):
I dissent from that part of the majority opinion which holds that the ex-wife of an accused is a competent witness to testify against her former husband in a criminal case occurring after the divorce, but while the divorce decree is challenged by a pending appeal.
It is true that Mrs. Hudson was granted an absolute divorce by the trial court. However, the term "absolute" is misleading in that its absoluteness or finality is conditioned to the opinion of this Court. If affirmed, it of course becomes absolute and final in reality. If reversed, the decree of the lower court is nullified, leaving the marriage intact. The decree is absolute only in the sense that nothing further remains to be done in the trial court to make the divorce final. It nevertheless is conditional since its absoluteness depends upon the opinion of this Court. This perplexity is set forth in Bunkley & Morse's Amis, Divorce and Separation in Mississippi, section 16.02 (1957), as follows:
It will be noted that the statute simply declares that all marital rights of the parties as related to each other shall cease with the decree. If no appeal be prosecuted, the status of the parties is that of unmarried persons who may contract another marriage unless prohibited by the decree. But since the statute authorizes an appeal to the Supreme Court, with power in that court to reverse or annul the decree of the chancery court, it is apparent that, in case an appeal is taken, there will be no finality as to the decreed status until it is affirmed by the court of last resort. However, since the statute provides that in no case shall such an appeal vacate the decree, it follows that the party in whose favor the divorce was granted may remarry pending an appeal, no matter whether the appeal be with or without supersedeas, subject to the hazard of a reversal by the Supreme Court. In case the decree be affirmed on appeal, such a marriage would be valid from the beginning, but if reversed, would of course be invalid... .
It is my opinion that Mrs. Hudson was not a competent witness to testify against her husband since the divorce she had obtained was subject to being invalidated by this Court, thus reinstating the marriage status, leaving her an incompetent witness.
It is my thought that the validity of a judgment in a criminal case should not depend upon the outcome of a divorce proceeding to determine whether a state's witness is competent to testify, but rather that the prohibition against husbands and wives announced in Mississippi Code Annotated section 13-1-5 (1972) should have application during the interval that a divorce case *771 is on appeal. See Acker v. State, 421 S.W.2d 398 (Tex.Cr.App. 1967), and Davis v. State, 96 Tex.Cr.R. 367, 257 S.W. 1099 (1924).
I therefore respectfully dissent since I believe Mrs. Hudson was not a competent witness.
RODGERS, P.J., and INZER and BROOM, JJ., join in this dissent.
NOTES
[1] Instruction No. 2. The Court instructs the jury for the State of Mississippi that while malice aforethought is a necessary ingredient to the crime of murder, still, "malice aforethought" means the same as killing a human being with the deliberate design to effect the death of the person killed; and this malice aforethought and deliberate design do not necessarily mean hatred or ill will, and need not exist in the mind of the Defendant for any definite time, not for days or hours, or even minutes, but if the deliberate design to kill exists but for an instant at the very time the fatal shot was fired, this is sufficient premeditation and deliberation to constitute the offense, unless the Jury should believe from all the evidence in this case that the Defendant was legally excusable.
[2] Instruction No. 3. The Court instructs the Jury for the State of Mississippi that the Defendant, Thomas H. Hudson, could not arm himself with a deadly weapon with the intention of using it to overcome the deceased, Frank Butts, if necessary, by either murdering him or inflicting grave bodily harm an injury upon him, and so armed, without abandoning said purpose and so remaining the aggressor throughout the entire time, provoke a fatal difficulty with him and in such difficulty slay Frank Butts with such deadly weapon and be heard to say that he acted in self-defense.
[3] Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. A criminal prosecution of either husband or wife for contributing to the neglect or delinquency of a child or desertion or nonsupport of children under the age of sixteen (16) years or abandonment of children shall be deemed controversies between husband and wife for the purpose of this section. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.