[Civ. No. S. C. 3. Second Appellate District, Division One.—April 2, 1937.]

ELIZABETH LEE WYNNE, Appellant, v. WALTER M. WYNNE, Respondent.

Swaffield & Swaffield, Kenneth Sperry and Joseph E. Madden for Appellant.

W. C. Shelton and George W. Burch, Jr., for Respondent.

DESMOND, J., *pro tem.*—The plaintiff, in a suit for separate maintenance, appeals from a judgment which holds that the defendant, a naval officer, is not her husband and that she has no right of support or maintenance from him. While the ground of appeal is not expressly stated, it is clear that appellant's contention is that the findings upon which the judgment rests are not supported by the evidence; therefore that the judgment cannot stand.

The suit was filed on March 9, 1933, in the county of Los Angeles. The complaint alleged, as one of the specifications of cruel treatment causing plaintiff grievous mental suffering, "That on or about the 20th day of February, 1933, in the First Judicial District Court of the State of Nevada, in and for the County of Douglas, a complaint was filed by defendant upon a simulated residence of said defendant, Walter M. Wynne, in said State of Nevada. That said alleged cause of action for divorce is based upon the grounds of extreme cruelty; whereas, in truth and in fact, defendant established a residence in Nevada only for the express purpose of filing said cause of action for divorce; that the matrimonial domicile of the parties hereto has never been the State of Nevada."

The answer of defendant, filed March 25, 1933, admitted that he did file the Nevada divorce action mentioned in

plaintiff's complaint, but denied that he established a residence in Nevada solely for the express purpose of filing said suit, alleging that he "is a resident of the county of Washoe, State of Nevada, in which state he has established his permanent residence". After the lapse of several months, and on August 8, 1933, the court granted a motion to file an amended answer, in which, by way of affirmative defense it is alleged: "That the plaintiff in this action was served with a copy of the complaint and summons in the said Nevada divorce action on February 23, 1933. That the plaintiff in the present action failed to appear or plead to the said Nevada divorce action, and, her default having been entered therein, the First Judicial District Court of the State of Nevada, in and for the County of Douglas, on May 11, 1933, granted to the defendant in this action a final decree of divorce from the above named defendant.

"That the defendant alleges the fact to be that the Superior Court of Los Angeles County, California, has no jurisdiction over either the person of the defendant, or the purported first cause of action of the plaintiff, for the reason that the relationship of husband and wife does not exist between the parties to this action."

The trial court found that at the time defendant filed his divorce action in Nevada, he was a resident of that state and had been such continuously from November 15, 1923 (meaning undoubtedly 1932), and further, "that the said residence was established in good faith, and with the purpose of making the county of Washoe, State of Nevada, his permanent residence, and that it is not true that said residence of the defendant was not in good faith, or was simulated, or fraudulent or solely and only for the purpose of obtaining a divorce from the plaintiff".

Another finding was as follows: "The court finds that said plaintiff failed to appear or plead in said Nevada divorce action, and upon the expiration of the time required by law to appear, her default was duly entered and thereafter, on the 11th day of May, 1933, a decree of divorce was granted the defendant by the First Judicial District Court of the State of Nevada, in and for the County of Douglas, divorcing him from the plaintiff, and that said decree of divorce is final."

Upon the trial of the cause one witness only was examined: the respondent, called under section 2055 of the Code of Civil Procedure. When he had finished his testimony, counsel for appellant stated to the court: ''I further offer to prove that Mrs. Wynne was the innocent party and ask leave of court to proceed with the evidence on the ground that the defendant has not shown he established a *bona fide* residence in Nevada.'' The court sustained an objection to the offered evidence, ''on the ground that the evidence now shows Mr. Wynne did establish a residence within the State of Nevada''. Appellant's counsel then inquired, ''Then, according to the limitations placed upon me the case is closed?'' to which the trial court responded, ''Yes.'' Just a few moments previously, the trial judge had commented as follows:

''The Court: I would have been a little bit afraid of Mr. Wynne if he had said anything contrary. *But he said he went down there for the purpose of getting a divorce; very frankly he tells us that.* But he also said that he went down there for the purpose of establishing a residence. Mr. Wynne comes into court and by a very frank statement puts himself in the position where the court can rely on what his intentions were more than otherwise. He should not be penalized for telling the truth.'' (Italics ours.)

But the transcript shows respondent had not frankly told the court that he went to Nevada for the purpose of getting a divorce. Quite the contrary, as witness this excerpt from the testimony:

''Q. By Mr. Madden: Your purpose in going to Nevada was to secure a divorce, isn't that correct? A. It was not.''

We have read the testimony and examined the documents admitted as exhibits in this case, and can find no evidence to support the finding of the trial court that respondent had established a *bona fide* residence in the state of Nevada. From his own testimony, and from the letters and other documents presented by the record, it appears that he failed to rid himself of his wife in Pennsylvania, where he found it wise to dismiss a libel for divorce which he had filed against her in 1931; that a year later, while assigned to duty in California waters, he availed himself of the proximity of Reno to accomplish his purpose, employing an attorney there, who, in order that respondent might establish *bona fides* in his claimed residence, rented him, at $5 per month, a room

adjoining his office, in which a bed was placed and where respondent kept his overcoat, heavy socks, and some other articles. Respondent slept there one night, at the same time his decree was granted, but whether anyone else also rented the same room, he was unable to say. Instead of serving as a demonstration of good faith in the matter of establishing a permanent residence in the state of Nevada, these facts, as well as those which follow, taint the whole proceeding with *mala fides*.

It appeared that respondent crossed the state of Nevada several times by train, was "more or less familiar with the country", and being asked what his intention was in coming to Nevada, answered, "It was a place from which I could vote. I liked the country and I could stay there." But he did not vote there, nor did he register, nor did he stay there. Immediately after his divorce decree was granted he left Nevada and has never returned there, except to be married at Las Vegas on June 22, 1933, to a woman other than appellant, the bride and groom departing from Nevada immediately after that ceremony and residing in California at the time this action was tried. As to his claimed residence before his Nevada action was filed, it appeared that he first went to that state on November 16, 1932; that he consulted his attorney at Reno concerning his proposed divorce that day; that he stayed in Nevada two days, returning about a week or five days later, and again in December spending a week on each of two trips there. He testified that he returned in January, on that occasion spending more than three weeks in Nevada; that his suit was filed on February 20th and that he next returned on May 10th, his decree being granted on the following day.

The Supreme Court of California has said, in the case of *Delanoy* v. *Delanoy*, 216 Cal. 27, at page 34 [13 Pac. (2d) 719, 86 A. L. R. 1321], that "it is always competent to collaterally impeach a decree of divorce rendered in another state by extrinsic evidence showing that the court pronouncing it did not have jurisdiction either of the parties or the subject matter. Thus the decree may always be attacked on the ground that the foreign court had no jurisdiction because the petitioning party was not a *bona fide* resident, or that the law of the sister state was not complied with."

136

■ Since this court does not hesitate to reverse a judgment when there is no evidence to support it (*Driscoll* v. *Market St. Cable Ry. Co.*, 97 Cal. 553 [32 Pac. 591]; 33 Am. St. Rep. 203]; see, also, other California cases collected in the opinion in *Chase* v. *Jonkey*, 12 Cal. App. (2d) 365, 369 [55 Pac. (2d) 1229]), and since this appeal presents just such a situation, it is apparent that an order of reversal should be made on the points heretofore discussed. That being so, it becomes unnecessary to consider the further point raised by appellant, relying again upon *Delanoy* v. *Delanoy, supra,* that she was unjustifiably denied the right to proceed with her suit upon the court's determining the initial question of the validity of the Nevada decree adversely to her contention. ■ Respondent argues that appellant, not having established a domicile in California has no standing in the courts of this state in a case of this character. This is a suit for separate maintenance, not for divorce, and our Supreme Court has held (*Hiner* v. *Hiner*, 153 Cal. 254 [94 Pac. 1044]) that even a nonresident wife may maintain such an action.

The judgment is reversed.

Houser, P. J., and York, J., concurred.