[S. F. Nos. 18118, 18359.   In Bank.   Mar. 17, 1953.]

SARA JANE TALBOT DIMON, Respondent, v. CHARLES GRAYSON DIMON, Appellant.

Johnson, Harmon & Henderson and Robert H. Johnson for Appellant.

Samuel L. Fendel and Gerald D. Marcus for Respondent.

SHENK, J.—This is an action by a former wife against her former husband to obtain past and future alimony for herself and past and future support for the children of the marriage previously terminated by a divorce in Connecticut. The defendant interposed a cross-complaint alleging that certain real and personal property is held by the plaintiff in trust for the defendant.

The trial court by judgment entered on the 25th of November, 1949, awarded the plaintiff $1,950 for "alimony and support" for herself from the date of the Connecticut decree until her remarriage on August 31, 1948; also $1,850 for the "support, care and maintenance" of the two minor children from date of that decree until the commencement of this action on August 4, 1947; also the sum of $37.50 per month for the support of each child from the commencement of this action until majority. The judgment included an award of $500 counsel fees and $48.15 costs. On the cross-complaint the judgment was that the defendant take nothing. The defendant appealed from the judgment and the whole thereof. After the appeal was taken the court on the plaintiff's motion made an award of $750 counsel fees, $250 costs and $37.50 per month for the support of the child who was still a minor during the pendency of the appeal. There is also an appeal from that order.

The parties were married in Oregon in 1926. In 1945 they separated. In March, 1946, the plaintiff wife obtained a divorce in Connecticut based on constructive service only. That decree awarded the custody of the two children to the plaintiff and purported to award alimony and child support to the plaintiff.

Both parties are nonresidents of this state. The plaintiff and the children live in Oregon, and the defendant in Nevada. The suit was brought by the plaintiff suing in her own name and right to recover money she had paid out for past support of the children and herself, and for future alimony and support of the children. The children are not parties to the action. The plaintiff concedes that the "in personam" provisions of the Connecticut decree cannot be enforced, and the present action is not based on those provisions.

The primary question concerns the jurisdiction of California courts to enforce a support obligation of a nonresident former husband under the foregoing circumstances.

An examination of the law on the subject indicates merit in the defendant's contention that in this state a wife's right to recover alimony or support for herself is limited to the period when the parties are husband and wife.

Section 136 of the Civil Code provides: "Though judgment of divorce is denied, the court may, in an action for divorce, provide for the maintenance by the husband, of the wife and children. . . ."

Section 137, as it existed at the time this action was commenced provided that, "When an action for divorce is pending" the court may require the payment of alimony or support. It also provided that "During the pendency of any such action" the court may require payments for alimony, costs, attorney's fees and support and maintenance.

Section 139 as it existed at the time of the commencement of this action provided that "Where a divorce is granted for an offense of the husband, the court may compel him to . . . make such suitable allowance to the wife for her support . . . as the court may deem just. . . ."

The language of these sections shows a consistent legislative purpose to confine the powers of the court to decree support in any form to the period when actions for divorce, annulment and separate maintenance are pending, including time on appeal and such further time as may be within the scope of the decree in the particular action. The amendments to sections 137, 138 and 139 since this action was commenced (Stats. 1951, vol. 2, p. 3910) do not change the provisions of these sections in matters here relevant. Primarily, the amendments broaden the provisions for separate maintenance where the marriage still exists. The language employed indicates a continued legislative purpose to limit the time during which application for alimony and support may be made. Our courts have consistently recognized that the existence of the marital status is a prerequisite to the granting of alimony (*Colbert* v. *Colbert*, 28 Cal.2d 276, 279 [169 P.2d 633] ; *Carbone* v. *Superior Court*, 18 Cal. 2d 768, 771 [117 P.2d 872, 136 A.L.R. 1260] ; *Talbot* v. *Talbot*, 218 Cal. 1, 2 [21 P.2d 110] ). The application for alimony has been held to be a collateral proceeding or episode within the action for divorce, authorized for a particular purpose, but dependent for its maintenance upon the existence of the action. (*Kellett* v. *Marvel*, 9 Cal.App. 2d 629, 630-631 [51 P.2d 185] ; see, also, *Dunphy* v. *Dunphy*, 161 Cal. 87, 91 [118 P. 445] ; *Hite* v. *Hite*, 124 Cal. 389, 393 [57 P. 227, 71 Am.St.Rep. 82, 45 L.R.A. 793] ; *Sharon* v. *Sharon*, 67 Cal. 185, 197 [7 P. 456, 635, 8 P. 709].)

In *Howell* v. *Howell*, 104 Cal. 45 [37 P. 770, 43 Am. St.Rep. 70], it was held that the court had no jurisdiction to make an award for alimony to a wife who previously had obtained a final decree of divorce based on constructive service only. The court relied upon the provisions of the Civil Code referred to above to the effect that alimony could be decreed

only "when an action for divorce is pending" (Civ. Code, § 137). The case at bar is a close parallel to the Howell case, with the exception that in the present case the plaintiff's prior divorce decree was not issued by a court of this state and she seeks relief in a new and independent action. To permit her to prevail in this action would afford greater relief than would be available to her had she been a resident of this state and brought her original action here. The Howell decision has been followed in numerous cases, including *McClure* v. *McClure,* 4 Cal.2d 356, 359 [49 P.2d 584, 100 A.L.R. 1257]; *Tolle* v. *Superior Court,* 10 Cal.2d 95, 97 [73 P.2d 607]; *Puckett* v. *Puckett,* 21 Cal.2d 833, 841 [136 P.2d 1]; *Calhoun* v. *Calhoun,* 70 Cal.App.2d 233, 237 [160 P.2d 923]; *Patterson* v. *Patterson,* 82 Cal.App.2d 838, 842 [187 P.2d 113]; *Hinson* v. *Hinson,* 100 Cal.App.2d 745, 746 [224 P.2d 405].

The plaintiff seeks to distinguish the Howell case on the ground that the action there was brought upon the prior divorce decree, whereas in the present case the action is one in equity, so called, and not dependent upon the provisions of the codes. It is claimed that the superior courts of this state have the same jurisdiction in equity possessed by the English courts of chancery unless prohibited by statute (*Tulare Irr. Dist.* v. *Superior Court,* 197 Cal. 649, 660 [242 P. 725]); that although the code sections provide no authority for the cause of action she has attempted to state, they do not prohibit such an action; that "for every wrong there is a remedy" (Civ. Code, § 3523); that the powers of a court of equity should not be "confined by rigid rules of law," and that "its powers should be so broad as to be capable of dealing with novel conditions." (Citing *Bechtel* v. *Wier,* 152 Cal. 443, 446 [93 P. 75, 15 L.R.A.N.S. 549].)

If the plaintiff's arguments are to prevail the provisions of the Civil Code which have been held to prohibit remedies similar to that which she seeks must be disregarded. However it is urged that the long continued application of the code sections has placed California out of harmony with other states of the Union; that it permits the husband to desert his family and flee the matrimonial domicile to the haven which the laws of this state afford him; that the wife is put to the election either of never divorcing him in a jurisdiction where she cannot get personal service on him, or of sacrificing the right to alimony however necessitous her circumstances might be. The answer would seem to be that

where she is, as here, the actor in the case she is put to the election of seeking a divorce in a jurisdiction where personal, service on her husband may be obtained or of proceeding in a jurisdiction where subsequent awards of alimony are authorized, such as Massachusetts (Annotated Laws of Massachusetts [1951], vol. 6, p. 484) and New Jersey (New Jersey Rev.Stats. [1937], vol 1, tit. 2, p. 269). There are states wherein the courts have recognized that when a husband is the actor and has secured a divorce from an absent wife, the latter is permitted to claim alimony in a later suit. (*Turner* v. *Turner*, 44 Ala. 437; *Davis* v. *Davis*, 70 Colo. 37; *Thurston* v. *Thurston*, 58 Minn. 279 [59 N.W. 1017]; *Crawford* v. *Crawford*, 158 Miss. 382 [130 So. 688]; *Cox* v. *Cox*, 19 Ohio St. 502 [2 Am.Rep. 415]; *Toncray* v. *Toncray*, 123 Tenn. 476 [131 S.W. 977, Ann.Cas. 1912C 284, 34 L.R.A.N.S. 1106].) In *Hutton* v. *Dodge*, 58 Utah 228 [198 P. 165], the court allowed a wife to bring a subsequent action for alimony where, in the prior divorce action on constructive service by the wife in that state, the decree specifically provided that it was subject to modification, as to alimony, at any time upon notice of motion by the plaintiff served upon the defendant within the state. Here the plaintiff would distinguish many of the cases (see *McFarlane* v. *McFarlane*, 43 Ore. 477 [73 P. 203, 75 P. 139]; *Hall* v. *Hall*, 141 Ga. 361 [80 S.E. 992]; *Darby* v. *Darby*, 152 Tenn. 287 [277 S.W. 894, 42 A.L.R. 1379]; *Kelley* v. *Kelley*, 317 Ill. 104 [147 N.E. 659]; *Doeksen* v. *Doeksen*, 202 Iowa 489 [201 N.W. 545], *Staub* v. *Staub*, 170 Md. 202 [183 A. 605]) which take a view contrary to her theory of relief on the same basis that she would distinguish *Howell* v. *Howell, supra,* 104 Cal. 45, namely, that the wife in those cases attempted to reopen the divorce suit and modify that decree to provide for support rather than bring a new and independent action. However, the court in the Howell case stated that "after the judgment granting the divorce the plaintiff was no longer the wife of the defendant; and he owed her no longer any marital duty. From that time on she could enforce against him no obligation not imposed by the court at the time of the judgment." This statement in effect has been repeated many times by the courts of this state.

██ It is concluded that at the time this action was brought there was no authority in this state supporting the plaintiff's right to pursue her claim for alimony, either past

or future; and that appears to be our law at the present time. It may be of interest to note that in 1951 the Legislature enacted the Reciprocal Enforcement of Support Law (Stats. 1951, vol. 1, p. 1906; Code Civ. Proc., § 1650 et seq.). The purposes of that law are "to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." (Code Civ. Proc., § 1651.) Briefly the act provides that a party entitled to support may file a complaint in the court of the county of her residence, naming as defendant the alleged obligor and giving his address in the state having reciprocal legislation. A certificate is transferred to a court in that state which may obtain jurisdiction over the person of the defendant and conduct a hearing. Such a court may then enter an appropriate order commanding the defendant to pay into court the award in favor of the plaintiff. This act did not become effective until after the present action was commenced and it is not claimed that it comes within the provisions of the act. Any further extension of the duties of support is a legislative function. It was so recognized by the 1951 Legislature when it enlarged to some extent the relief theretofore not available under our existing statutes.

There is a further question which involves the distinction between the plaintiff's alleged claim for support for herself, and support for her minor children. ▮ It is the law of this state that a divorced wife who has the custody of minor children may bring an action against the father for their support (*Dixon* v. *Dixon*, 216 Cal. 440 [14 P.2d 497] ; *Davies* v. *Fisher*, 34 Cal.App. 137 [166 P. 833] ). ▮ Penal Code, section 270, provides for criminal liability of a father who fails to provide for his minor child; and he is not relieved from that liability "merely because the mother of such child is legally entitled to the custody of such child. . . ." ▮ Since it applies to a "father of either a legitimate or illegitimate minor child," the existence of the marital status is not a prerequisite to liability. ▮ Civil Code, section 138, as it existed at the time this action was brought, provided that "In actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper. . . ." Unlike the construction given to those sections of the Civil Code setting forth the rights of the wife to ali-

mony and support (Civ. Code, §§ 136, 137 and 139) this section has long been held to authorize an action for the support and maintenance of the minor children of a marriage although the marriage has been terminated by a divorce decree. (*McKay* v. *McKay,* 125 Cal. 65 [57 P. 677].) Civil Code, section 137.1, enacted in 1951 after the complaint herein was filed, provides: "When a father or mother has the duty to provide for the support, maintenance and education of the children of the father and mother and wilfully fails to provide for such support . . ., the father or mother, as the case may be . . . may maintain an action in the superior court against the mother or father . . . as the case may be, for the support, maintenance and education of said children." The effect of this provision does not appear to have been judicially declared. However, it is a legislative enactment of the case law as it existed at the time this action was commenced.

While the plaintiff in this case may maintain an action for the support of the minor children of the marriage, no case has been referred to where an award for other than future support has been made. In *McKay* v. *McKay, supra,* 125 Cal. 65, the court decreed an award against the father for the maintenance and support of the minor children of a marriage previously terminated by divorce, but denied the wife's claim for reimbursement for money she had paid out in support of the children prior to any order of the court directing the father to maintain and support the children. The court stated at page 791: "The question of the father's liability for the care and support of his children after a decree of divorce, in which their custody has been awarded to the mother, has been frequently presented in actions brought therefor by strangers, or by the mother, and the courts have almost invariably held that an action against him to enforce such liability could not be maintained. . . . [Citations.] The jurisdiction which the court retains in the original case, either by express reservation in its decree, or which it has by authority of statute, to modify its judgment with reference to the custody and education of the children, or to make a new order in reference thereto, is not for the purpose of reimbursing her for any expenditures she may have voluntarily made in that behalf, but to provide for such expenses as may be subsequently incurred by reason of the direction that may be given regarding such care and education."

An action for the future support of minor children is a personal one. Being personal it is transitory. A transitory action may be brought in any state where the defendant can be found. (7 Cal.Jur. 596, and cases cited.) There is therefore no good reason for denying jurisdiction to entertain this action insofar as it relates to the future support of the minor children. The trial court has that jurisdiction. The question then is whether it has been properly exercised.

The court found that at the times involved the defendant was a strong, healthy and able-bodied man; that "without justification or legitimate excuse," he has wilfully and deliberately abstained from reasonable efforts to obtain gainful employment, and that he has earned, and is capable of earning, from five hundred dollars to one thousand dollars per month.

It is the defendant's contention that the foregoing findings are not supported by any substantial evidence in the record. With this contention we must agree. The undisputed evidence is that the defendant has no income and no assets; that he is and has been since the divorce in ill health and dependent on an aunt for support; that the only business in which he has been gainfully employed and experienced is the shipping business; that his employment in that business was lost to him without his fault, and that he has since sought employment without success. There is no evidence to contradict the defendant's statement that he has been and is in ill health, is dependent on an aunt for support, and is incapable of making a living. The finding is without sufficient evidentiary support.

The defendant sought by cross-complaint to have it adjudged that certain real and personal property held in the plaintiff's name was possessed by her in trust for the defendant. In the main this property consisted of a country estate in Connecticut of approximately 156 acres, including a 13-room home, an 8-room guest house, cabana house, three car garage, 10 other garages, kennels, barns, a silo, shops, and other appurtenances and equipment. The property was alleged to have a value in excess of $75,000. Admittedly all of it was purchased with money belonging to the defendant. After the parties separated the plaintiff continued to live at the family home and eventually disposed of all of the property. At the time of the trial she still had $12,000 of the proceeds of the sale of the property. It is the plaintiff's contention that she acquired the major portion of the property by gift

from the defendant, and the remainder was necessarily sold to meet the defendant's obligations. It is the defendant's position that the parties never intended that transfers of the property to the plaintiff were to be absolute. On sharply conflicting but substantial evidence the trial court made findings in accordance with the plaintiff's contentions with respect to the question of the execution and finality of the gifts and the disposition of the other property involved. Upon these findings the trial court properly concluded that the defendant take nothing by his cross-complaint.

The judgment for the plaintiff on the cross-complaint is affirmed. In all other respects the judgment and the order are reversed; neither party to recover costs on appeal.

Edmonds, J., Carter, J., and Spence, J., concurred.

TRAYNOR, J., Concurring and Dissenting.—These appeals from the judgment of November 25, 1949, and the order of September 15, 1950, bring into question six decisions of the trial court in favor of plaintiff: (1) judgment for $1,950 as reimbursement for amounts spent for her own support after the Connecticut decree and before her remarriage; (2) judgment for $1,850 as reimbursement for amounts spent for the support of the two minor children after the divorce decree and before commencement of this action; (3) judgment for $37.50 per month for the support of each child from the commencement of the action until the child reaches majority; (4) judgment for $500 counsel fees and $48.15 costs incurred in the trial of the action; (5) judgment in favor of plaintiff on the cross-complaint; (6) order awarding plaintiff $750 counsel fees, $250 costs, and $37.50 per month for child support, to enable her to defend the appeal and to support the child who was still a minor. The majority opinion affirms (5); the rest of the judgment and the order are reversed. One ground for reversal is that there is no evidence that defendant is able to make the payments ordered by the trial court. In addition, (1) is reversed on the ground that after dissolution of a marriage California does not allow a former wife an action for her support, past or future, and (2) is reversed on the ground that an action for reimbursement of past expenditures for child support will not lie.

In my opinion, the trial judge did not abuse his discretion in determining that defendant had the ability to pay the amounts awarded for suit money and child support. Under

the circumstances of this case defendant can be required to reimburse his former wife for debts incurred on behalf of their children. I do not agree that dissolution of a marriage by an ex parte decree necessarily bars a subsequent action for support, but I agree that the record does not sustain the allowance for plaintiff's past expenditures for her own support. I agree that the judgment in favor of plaintiff on the cross-complaint should be affirmed. I would affirm the judgment and order except for that part of the judgment awarding plaintiff $1,950 for her past support.

### Defendant's Ability to Pay

The granting or denying of awards for suit money and child support rests largely in the discretion of the trial court; its decision will not be disturbed on appeal without a clear showing of an abuse of that discretion. (*Baldwin* v. *Baldwin,* 28 Cal.2d 406, 413 [170 P.2d 670]; *Dickens* v. *Dickens,* 82 Cal.App.2d 717, 722 [187 P.2d 91].) In the present case plaintiff's need, the children's need, and the reasonableness of the amounts awarded, were established by substantial evidence. An abuse of discretion is shown only if it is established as a matter of law that the trial judge could not reasonably conclude that defendant had the ability to meet the payments.

In determining the amount of the allowance under sections 137, 137.5, 138, and 139 of the Civil Code, the trial judge must take into account the defendant's ability to pay. (*Sweeley* v. *Sweeley,* 28 Cal.2d. 389, 394 [170 P.2d 469]; *Arnold* v. *Arnold,* 215 Cal. 613, 615 [12 P.2d 435].) The orders, however, need not be based upon the actual income of the husband. They may be based solely upon his ability to earn money by the use of reasonable effort. (*Webber* v. *Webber,* 33 Cal.2d 153, 160 [199 P.2d 934]; *Eidenmuller* v. *Eidenmuller,* 37 Cal. 364, 366; *McGann* v. *McGann,* 82 Cal. App.2d 382, 389-390 [186 P.2d 424].) Thus, in *Tompkins* v. *Tompkins,* 83 Cal.App.2d 71 [187 P.2d 840], the court upheld an allowance of support against a husband who had not worked for many months, accepting the wife's contention that "a guilty party cannot avoid the responsibility for payment of alimony by the simple expedient of avoiding employment." (83 Cal.App.2d at p. 79.)

The record establishes that defendant had been employed as a steamship company executive for many years, earning from $500 to $1,000 per month. Since the divorce he has lived with his wealthy aunt in Nevada. He testified that he

had no money or property and that his aunt paid all his bills and gave him pocket money. Defendant was 47 years old at the time of trial. When asked if he had made any efforts to get a job, he replied: "I had tried several times in New York. It is no easy thing to go in and get a job as president, the job that I had done; most companies have their own presidents." Defendant testified that he had high blood pressure and that his doctor had advised him not to work. The doctor was not called as a witness and defendant's testimony regarding his health was not corroborated. Plaintiff testified that defendant's health had been good during their marriage. Defendant had an interest in the outcome of the case, and it was to his advantage to claim that he was unable to work. The trier of fact was entitled to disbelieve his testimony that he was in poor health. (*Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521] ; *Blank* v. *Coffin*, 20 Cal.2d 457, 462 [126 P.2d 868].) In an apposite case, a reduction of alimony was upheld on the ground that the trial court "could judge from the appearance of the [wife] as to whether she was or was not physically able to earn any part of the money necessary for her own support. The replies of the [wife] . . . upon the cold record indicate at least a lack of any real disposition on the part of the [wife] to earn any part of her own living." (*Lamborn* v. *Lamborn,* 80 Cal.App. 494, 498 [251 P. 943].) Similarly, in the present case the trier of fact could conclude that it was defendant's distaste for physical exertion that precluded his obtaining employment.

In this proceeding we are not concerned with problems that might arise if defendant should refuse to pay the amounts ordered by the trial court. Under an early decision of this court a deliberate refusal to work could not be punished by contempt (*Ex parte Todd,* 119 Cal. 57, 58 [50 P. 1071]), but ordinary judgment remedies would be available and the judgment could be satisfied if defendant should inherit or otherwise obtain property. Moreover, the threat of execution upon any subsequently acquired property (*cf. Di Corpo* v. *Di Corpo,* 33 Cal.2d 195, 201 [200 P.2d 529]) might be sufficient to induce defendant to work.

I am therefore of the opinion that the orders for suit money* and for future support of the children should be affirmed.

---

*Reversal of the judgment for support on the merits would not necessitate reversal of the order awarding suit money, if the defendant's ability to pay were established. (*Weil* v. *Weil,* 37 Cal.2d 770, 790 [236 P.2d 159]; *Gay* v. *Gay,* 146 Cal. 237, 240 [79 P. 885].)

Since the awards for past support for the children and the wife are reversed on additional grounds these also must be considered.

*Child Support*

The majority opinion recognizes that a former wife having custody of minor children may bring an action for their future support. (*Dixon* v. *Dixon*, 216 Cal. 440, 442 [14 P.2d 497].) In my opinion, the judgment partially *reimbursing the wife* for debts incurred on behalf of the children for past support may also be sustained.

Plaintiff testified that she did not own any money or property at the time of trial, except for some stocks and bonds that had been pledged as security for her debts. Since the divorce she has partially supported the children from her own funds. Moreover, she was compelled to borrow $7,100 for support of the children, $3,900 from her father and $3,200 from her second husband. The trial court ordered defendant to pay $1,850 toward meeting the past expenditures by plaintiff.

Section 137 of the Civil Code provides that when "a father wilfully fails to provide for his children, the mother of the children may, without applying for a divorce or maintenance for herself, maintain in the superior court an action against him solely for the support and maintenance of the children."† Nothing in the statute shows that it is limited to actions for future support.

It is contended, however, that section 138 of the Civil Code, as construed in *McKay* v. *McKay*, 125 Cal. 65 [57 P. 677], bars the award in the present case. Section 138 is inapplicable here, since that statute applies to awards for child support in divorce proceedings brought in California courts. The controlling statute is not section 138 but section 137, providing for actions for support of children independent of divorce actions. (*Dixon* v. *Dixon*, 216 Cal. 440, 443 [14 P.2d 497]; see, also, *Foy* v. *Foy*, 23 Cal.App. 2d 543, 546 [73 P.2d 618].) In any event, the decisions construing section 138 do not support defendant's position, even by analogy.

The first case to set forth the problem of reimbursement for past expenditures is *Wilson* v. *Wilson* (1873), 45 Cal. 399. The divorce decree had not provided for the support

---

†After this action arose, section 137 was amended. Provisions for child support are now found in section 137.1. (Stats. 1951, ch. 1700, § 2.)

of the child. Two years after the decree the former wife sought an order for reimbursement of expenditures already incurred. This court affirmed an order of the trial court in favor of the wife, relying on the applicable statute which provided that the court might "during the pendency of the action, or at the final hearing, or afterwards, make such order for the support of the wife, and maintenance and education of the children of the marriage as may be just." (Stats. 1851, p. 187; Divorce Act, § 7.) The court pointed out that it might be "for the interest and welfare of the child, that his past as well as future support should be paid for by the defendant." (45 Cal. at p. 403.) In 1872, the statute was superseded by section 138 of the Civil Code, which then provided that the court might "before or after judgment give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." In *McKay* v. *McKay, supra,* (1899), it was held that an allowance for past expenditures could not be maintained under section 138. The Wilson case was not overruled, but distinguished on the ground that it was decided "prior to the adoption of the codes, and under a statute which expressly authorized the court to make an order subsequent to the judgment for the maintenance of the children of the marriage." (125 Cal. at p. 69.) In 1905 section 138 was amended to provide that the trial court might "during the pendency of the action, or at the final hearing, or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody care, education, maintenance and support of such minor children as may seem necessary or proper." In *Jaeger* v. *Jaeger* (1925), 73 Cal.App. 128 [238 P. 139], it was determined that the amendment was substantially the same as the 1851 statute that "had been judicially interpreted by the court in *Wilson* v. *Wilson, supra.* No intention to the contrary being shown, and the Wilson case, in respect to the court's interpretation of the law then in force, not having been overruled, it may fairly be inferred that the legislature intended that the amendment should bear the same interpretation which had been given to the original act." (73 Cal. App. at p. 136; see *Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428].)

The present action is based upon section 137, which provided at the time the complaint herein was filed that the

wife may file an action "solely for the support and maintenance of the children." This language, the basis of the Wilson and Jaeger decisions, omitted the wording relied on in the McKay case. The conclusion is inescapable that an action for reimbursement for past expenditures for support and maintenance of children may be maintained under section 137.

In any event, even if the construction of section 137 urged by the majority opinion be adopted, we should sustain the action of the trial court in the present case. When the wife has unpaid bills at the time of suit, it is recognized that the trial court, in its discretion, may require the former husband to contribute toward repayment of the debts. As pointed out in *Jaeger* v. *Jaeger, supra,* 73 Cal.App. 128, 135, the welfare of the children may require reimbursement "to discharge her indebtedness and restore her credit" so as to "leave her free from embarrassment through existing wants or present indebtedness, obviate the necessity of devoting any part of the future allowance to the payment of such indebtedness, and so enable her to live in the future upon the allowance provided for that purpose." The power of the trial court to order reimbursement to extinguish existing debts has been recognized in many other cases. (*Gay* v. *Gay,* 146 Cal. 237, 243 [79 P. 885]; *Larsen* v. *Larsen,* 101 Cal.App.2d 862, 865 [226 P.2d 650]; *Younger* v. *Younger,* 112 Cal.App. 445, 446 [296 P. 1104]; *Reed* v. *Reed,* 40 Cal. App. 102, 106 [180 P. 43].)

At the time of trial the plaintiff was able to support the children only by borrowing from her father and from her second husband. Neither had any legal obligation to support the children. The trial judge could reasonably conclude that partial relief from past indebtedness was necessary to restore plaintiff's credit, since the provision for $37.50 a month for each child for future support would undoubtedly have to be complemented by further loans to plaintiff.

### The Wife's Past Support

Plaintiff's suit for support from the date of the Connecticut decree to the date of her remarriage is an independent action in equity to compel defendant to carry out the obligation to support her that he assumed by his marriage. Plaintiff bases her action upon the theory that under the law of Connecticut she had a right to support at the time of the divorce, that the question of that right was not and

could not be litigated in the divorce proceedings because the Connecticut court did not have personal jurisdiction over defendant, that her right survived the divorce, and that the courts of this state have the power as courts of equity to recognize and enforce defendant's duty to support her. It is contended on behalf of defendant that an action for support depends upon the existence of the marital relation and that dissolution of the marriage ends the right to support. Two theories are thus advanced to justify denial of the action by the former wife for support: (1) that the divorce terminated the marriage status and the duty to support dependent thereon and (2) that a support order is obtainable only in an action for divorce or separate maintenance.

In my opinion, the wife's right to support, although arising out of the marriage, is not lost by dissolution of the marriage unless it could have been litigated in the proceedings thereto; further, I believe that California courts have jurisdiction to entertain proceedings in equity for support, independent of actions for divorce or separate maintenance. I cannot agree that an action by a former wife in such a situation as plaintiff's is barred simply because the parties are no longer married.

By marriage, a husband assumes the duty to support his wife (Civ. Code, §§ 155, 174; *Sanderson* v. *Niemann*, 17 Cal. 2d 563, 568 [110 P.2d 1025] ; *Title Ins. & Trust Co.* v. *Ingersoll*, 158 Cal. 474, 492 [111 P. 360] ; *Chaffee* v. *Browne*, 109 Cal. 211, 219 [41 P. 1028]), a duty that is enforceable by the state (Pen. Code, § 270a) as well as by the wife. Although that duty arises from the marriage, it is not necessarily terminated by dissolution of the marriage. If the marriage is dissolved through the wrong of the husband, he may be compelled to support his former wife after the divorce. (Civ. Code, § 139.) The allowance of support following divorce "proceeds upon the theory that the husband entered upon an obligation which, among other things, bound him to support the wife during the period of their joint lives, and gave to her a right to share in the fruits and accumulations of his skill; that by his own wrong he has forced her to sever the relation which enabled her to enforce this obligation, and for the wrong which thus deprived her of the benefit of the obligation, he must make her compensation." (*Ex parte Spencer*, 83 Cal. 460, 464 [23 P. 395, 17 Am.St.Rep. 266] ; see *Arnold* v. *Arnold*, 76 Cal.App.2d 877,

885-886 [174 P.2d 674]; *Remondino* v. *Remondino,* 41 Cal. App.2d 208, 213 [106 P.2d. 437].)

If the divorce court has personal jurisdiction over the husband, the wife has an adequate remedy in the divorce proceeding to obtain an allowance for support. If it does not, however, it may not award the wife support, although it may dissolve the marriage. (*Baldwin* v. *Baldwin,* 28 Cal. 2d 406, 415 [170 P.2d 670].) In that situation a wife's right to support is not lost, since it has never been adjudicated. There is nothing in section 139 to indicate that it was meant to provide the only remedy of the wife. A wife's right to support arises from the marriage and is recognized by statute. (Civ. Code, §§ 155, 174.) It is not created by a divorce decree; the decree is simply one means of enforcing the right.

It was settled at an early date that the power to award support falls within the inherent powers of a court of equity and exists independently of statutory authority. (*Paxton* v. *Paxton,* 150 Cal. 667, 670 [89 P. 1083]; *Livingston* v. *Superior Court,* 117 Cal. 633, 635 [49 P. 836, 38 L.R.A. 175]; *Galland* v. *Galland,* 38 Cal. 265, 268; see, also, *Murray* v. *Murray,* 115 Cal. 266, 274 [47 P. 37, 56 Am.St.Rep. 97, 37 L.R.A. 626].) ''It may be admitted that where a statute creates a right and also prescribes a particular remedy or procedure for its enforcement, such procedure can alone be invoked for such enforcement; but that is as far as the rule goes. In such case the special procedure may be considered as part of the right—limiting and conditioning it. But where the right is given by statute without any prescribed remedy, it may be enforced by any appropriate method recognized by the general law of procedure. This principle is crystallized in section 1428 of the Civil Code, which provides that 'an obligation arising from operation of law may be enforced in the manner provided by law, or by civil action, or proceeding.' And a suit in equity is peculiarly an appropriate remedy for the enforcement of the duty imposed by said section.'' (*Paxton* v. *Paxton, supra,* 150 Cal. 667, 670-671; see *Tulare Irr. Dist.,* v. *Superior Court,* 197 Cal. 649, 660 [242 P. 725].)

The Paxton case involved section 206 of the Civil Code, imposing a duty upon parents to maintain adult children unable to support themselves. That section provided no remedy to enforce the right, but the court allowed an independent suit in equity. The Livingston case, *supra,* involved

section 176 of the Civil Code, giving a husband the right to support from his wife when he was unable to support himself; the court allowed an independent suit in equity to enforce that right. It bears noting that rules of law have likewise been developed to protect the rights of an innocent person who enters into a husband and wife relationship in the belief that there is a valid marriage, although the Legislature has not provided a statutory solution to the variety of problems that can arise from a putative spouse relationship. (See *Sanguinetti* v. *Sanguinetti,* 9 Cal.2d 95, 99-100 [69 P.2d 845, 111 A.L.R. 342]; *Turknette* v. *Turknette,* 100 Cal.App.2d 271, 274 [223 P.2d 495].)

The social policy that impels a court to award support in a divorce proceeding when it has personal jurisdiction over the husband also impels the court to award support when he is first brought before the court after the divorce. Accordingly, many courts have held that an action for support may be maintained after a marriage has been dissolved by a court that lacked personal jurisdiction over one of the parties. (*Turner* v. *Turner,* 44 Ala. 437, 451; *Davis* v. *Davis,* 70 Colo. 37, 41 [197 P. 241]; *Rodgers* v. *Rodgers,* 56 Kan. 483, 488 [43 P. 779]; *Pawley* v. *Pawley,* —— Fla. —— [46 So.2d 464, 472]; *Woods* v. *Waddle,* 44 Ohio St. 449, 457 [8 N.E. 297]; *Cox* v. *Cox,* 19 Ohio St. 502, 512 [2 Am.Rep. 415]; *Searles* v. *Searles,* 140 Minn. 385, 387 [168 N.W. 133]; *Crawford* v. *Crawford,* 158 Miss. 382, 388 [130 So. 688]; *Spradling* v. *Spradling,* 74 Okla. 276, 277 [181 P. 148]; *Nelson* v. *Nelson,* 71 S.D. 342 [24 N.W.2d 327, 329]; *Toncray* v. *Toncray,* 123 Tenn. 476, 491 [131 S.W. 977, Ann.Cas. 1912C 284, 34 L.R.A.N.S. 1106]; *Hutton* v. *Dodge,* 58 Utah 228, 237 [198 P. 165]; *Adams* v. *Abbott,* 21 Wash. 29, 32 [56 P. 931].) These decisions point out that it was impossible for the wife to recover an allowance for support at the time of the divorce decree because the court lacked personal jurisdiction over the husband. If the question of support could not be litigated after dissolution of the marriage, the wife would be forever denied her day in court, and the husband would be allowed to escape the obligations incurred by his marriage. The wife's claim would be extinguished without an opportunity to present it for adjudication. In my opinion, the foregoing cases reach a sound result, and the majority opinion does not advance persuasive reasons to justify a denial to the former wife of an opportunity for adjudication of her claim to support from her former husband.

It is contended that the action by the former wife should be denied when, as here, she obtained the decree, on the theory that she "elected" to "waive" her right to support. Many courts have rejected this reasoning. (*Woods* v. *Waddle, supra*; *Hutton* v. *Dodge, supra*; *Adams* v. *Abbott, supra*; *Spradling* v. *Spradling, supra*; *Nelson* v. *Nelson, supra*.) In *Hutton* v. *Dodge, supra,* the court forcefully stated: "Let us assume, for instance, that in the present case plaintiff [wife] was not only entitled to a divorce and such property of defendant as was within the jurisdiction of the court, but to alimony as well. She could not follow her husband into another state and obtain relief for she would first have to establish residence there before she could sue. She could not obtain a decree for alimony here because she could not make personal service of summons on defendant within this state. In such circumstances, what remedy would the plaintiff have? If there ever was a case in which litigation by piecemeal was justified because of the inherent difficulty of obtaining relief in one action, it seems to the writer that the case presented is almost a perfect example. . . . It would be a travesty upon justice and a sad commentary on the power of judicial tribunals generally if the courts were powerless to grant relief in a case of this kind where jurisdiction of the defendant is afterwards seasonably obtained and the rights of third parties have not intervened. We have no fault whatever to find with cases which hold that where full and complete jurisdiction has been obtained over the subject-matter and the parties, judgments rendered in divorce cases as well as others are res adjudicata as to every question that might have been litigated under the issues made. In such cases the only remedy for subsequent relief incident to the divorce seems to be by appropriate proceedings in the case in which the divorce was granted. Not so, however, where jurisdiction of the person was not obtained." (58 Utah at pp. 232-234.)

The former husband, however, is not foreclosed from litigating the issue of his guilt in defending an independent action in equity for support by his former wife. The divorce decree obtained by constructive service is, of course, binding upon both parties insofar as marital status is concerned. (*Rediker* v. *Rediker,* 35 Cal.2d 796, 801 [221 P.2d 1, 20 A.L.R.2d 1152]; *Estate of Hughes,* 80 Cal.App.2d 550, 556 [182 P.2d 253].) It does not follow, however, that the decree adjudicated the husband's fault with regard to his duty

to support. (Rest. Judgments, § 74; see *Estate of Williams,*
36 Cal.2d 289, 292 [223 P.2d 248, 22 A.L.R.2d 716].) The
full faith and credit clause does not compel such a result
(*Estin* v. *Estin,* 334 U.S. 541, 549 [68 S.Ct. 1213, 92 L.
Ed. 1561, 1 A.L.R.2d 1412]); moreover, such a result would
create serious constitutional problems under the due process
clause. (*Rediker* v. *Rediker, supra,* 35 Cal.2d 796, 803;
see *Mullane* v. *Central Hanover Bank & Trust Co.,* 339
U.S. 306, 314 [70 S.Ct. 652, 94 L.Ed. 865].) ''It would
seem to follow as a corollary of the doctrine herein enunci-
ated that in such an action for alimony on the part of a
plaintiff, the defendant would have the right in his defense
to contest the merits of the divorce itself, not for the pur-
pose of setting it aside, but for the purpose of defeating the
alimony for which the action was brought. If the plaintiff
had the right to bring an independent action for alimony
after a divorce has been granted simply because she never
had and could not have her day in court in respect to ali-
mony in the divorce proceedings, the defendant for the same
reason should be entitled to his day in court respecting the
same matter.'' (*Hutton* v. *Dodge, supra,* 58 Utah at p. 237.)

The majority opinion discusses the California decisions at
length and concludes that an action for support could not
be maintained by a California wife after a divorce decree
based upon constructive service. The cases cited, however,
do not preclude an independent suit in equity by a former
wife for support after dissolution of the marriage in a pro-
ceeding where the remedy under section 139 was unavail-
able.

No California case has squarely held that the action will
lie, although there have been strong indications that it will.
(*Matter of McMullin,* 164 Cal. 504, 507 [129 P. 773] [''it
fell within the power of the wife under supplementary pro-
ceedings brought in this state with personal service upon
the former husband to have procured . . . an award of the
custody of the children, with provision for her own and
their support'']; *DeYoung* v. *DeYoung,* 27 Cal.2d 521, 527
[165 P.2d 457], concurring opinion of Mr. Justice Schauer
[''the right of a wife . . . to support from the other spouse
as of the date of the divorce is a property right which can
be adjudicated only by a court having jurisdiction in per-
sonam'']; *Bernard* v. *Bernard,* 79 Cal.App.2d 353, 357 [179
P.2d 625].)

In some of the California cases relied upon for a contrary rule (*Colbert* v. *Colbert,* 28 Cal.2d 276, 279 [169 P.2d 633]; *Carbone* v. *Superior Court,* 18 Cal.2d 768, 771 [117 P.2d 872, 136 A.L.R. 1260]; *Talbot* v. *Talbot,* 218 Cal. 1, 2 [21 P.2d 110]; *Hite* v. *Hite,* 124 Cal. 389, 391 [57 P.2d 227, 71 Am.St.Rep. 82, 45 L.R.A. 793]; *Hinson* v. *Hinson,* 100 Cal. App.2d 745, 746 [224 P.2d 405]), the action was for support pendente lite. The statements therein that marital status is a prerequisite to the granting of alimony are irrelevant to the issue presented by an action for support following an ex parte divorce. In such an action the former wife's recovery is of course predicated upon existence of the marital status at some time before suit is brought  The real question, however, is whether the relationship must continue until the date of suit. The cited cases do not supply an affirmative answer, for it is settled that suit money may be awarded in proceedings brought long after entry of the final decree of divorce. (*Lerner* v. *Superior Court,* 38 Cal. 2d 676, 685 [242 P.2d 321], and cases cited therein.)

In other cases (*Cardinale* v. *Cardinale,* 8 Cal.2d 762, 768 [68 P.2d 351]; *Patterson* v. *Patterson,* 82 Cal.App.2d 838, 842 [187 P.2d 113]; *Calhoun* v. *Calhoun,* 70 Cal.App.2d 233, 237 [160 P.2d 923]), the action was for separate maintenance. Separate maintenance can be awarded only during the continuance of the marriage. As Mr. Justice Schauer noted in his concurring opinion in *DeYoung* v. *DeYoung,* 27 Cal.2d 521, 527 [165 P.2d 457]: "Separate maintenance differs from alimony in that it presupposes a continuing marital status. The right to it cannot be established without proof that such status is existent at the time of trial. Proof of prior dissolution of the marriage is, therefore, a complete defense to such an action." (27 Cal.2d at p. 528; see, also, *Monroe* v. *Superior Court,* 28 Cal.2d 427, 429 [170 P.2d 473].) Unlike separate maintenance, however, the obligation to support a former wife may continue after the marriage is dissolved.

Cases are cited holding that when the divorce decree is silent as to an allowance for support, or the provision therefor is limited as to time, and power to modify is not reserved, further support payments cannot be ordered except upon appeal or application of section 473 of the Code of Civil Procedure. (*Puckett* v. *Puckett,* 21 Cal.2d 833, 841 [136 P.2d 1]; *Long* v. *Long,* 17 Cal.2d 409, 410 [110 P.2d 383]; *Tolle* v. *Superior Court,* 10 Cal.2d 95, 97 [73 P.2d 607];

*McClure* v. *McClure,* 4 Cal.2d 356, 359 [49 P.2d 584, 100 A.L.R. 1257].) In these cases, however, the court had personal jurisdiction over the parties and the question of support had been or could have been litigated. These cases do nothing more than apply familiar principles of res judicata. When, however, jurisdiction was obtained by constructive service, an *in personam* judgment for support could not be obtained. The question of the husband's obligation to provide for support of the wife was not and could not be litigated, and there is therefore no basis for res judicata. (See Rest. Judgments, § 74.)

Two other California decisions require further discussion In *Howell* v. *Howell* (1894), 104 Cal. 45, 47 [37 P. 770, 43 Am. St.Rep. 70], the wife obtained a decree of divorce by constructive service. An allowance for support could not be made. After the decree became final, the wife attempted to reopen the divorce action and obtain a modification of the decree to provide for her support. The court held that the decree, having become final, could not be modified. The case turned on this procedural point, and the question whether the wife could bring an independent action in equity was not at issue. The court stated, however, in a broad dictum that after the marriage ended an action for support could not be maintained. This dictum overlooked the fact that in the divorce proceeding the wife had no opportunity to litigate the issue of support and that the doctrine of res judicata therefore did not apply. The only California authority cited by the court was *Egan* v. *Egan,* 90 Cal. 15, 21 [27 P. 22], where the court had personal jurisdiction over the parties.

In *Calhoun* v. *Calhoun, supra,* 70 Cal.App.2d 233, the husband obtained a Nevada decree by constructive service. Subsequently, the wife filed an action in California for separate maintenance, but did not question the validity of the Nevada decree. The action by the wife was denied on the ground that separate maintenance could not be obtained after dissolution of the marital status. (See *Cardinale* v. *Cardinale, supra.*) The wife then filed an independent action in equity for support. A judgment in favor of the husband was affirmed. (*Calhoun* v. *Calhoun,* 81 Cal.App.2d 297 [183 P.2d 922].) The court, however, expressly left open the question whether the action could be maintained. (81 Cal.App.2d at pp. 300-301.) The court denied relief on the ground that at the time of the earlier action the wife had been aware of the Nevada decree and, once she elected to seek separate maintenance

instead of an allowance for support, she would not be permitted to harass her former husband by a multiplicity of actions. The Calhoun decision would be inapplicable when the former wife had no previous opportunity to recover an *in personam* judgment.

If a valid ex parte divorce is granted the husband by another state, the California wife may be protected only if she is allowed a subsequent action for support. California would of course be required to recognize that the marriage had been dissolved by the ex parte decree (*Williams* v. *North Carolina*, 317 U.S. 287, 299 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]), but the Constitution of the United States does not compel us to go farther and hold that the ex parte decree of a sister state destroyed the former wife's right to support. (*Estin* v. *Estin*, 334 U.S. 541, 549 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412] ; *Kreiger* v. *Kreiger*, 334 U.S. 555, 557 [68 S.Ct. 1221, 92 L.Ed. 1572] ; *Barber* v. *Barber*, 21 How. (U.S.) 582 [16 L.Ed. 226].) On the contrary, the requirement of the Williams case that the foreign decree be upheld strongly supports allowance of a subsequent action for support by a former wife. Formerly, when a husband obtained a foreign decree by constructive service the court would protect the wife by refusing to recognize the decree. (*Haddock* v. *Haddock*, 201 U.S. 562, 606 [26 S.Ct. 525, 50 L.Ed. 867] ; *Delanoy* v. *Delanoy*, 216 Cal. 27, 37 [13 P.2d 719, 86 A.L.R. 1321].) Since the Williams case, a husband obtaining a bona fide domicile in another state may secure a binding divorce decree by constructive service. (*Williams* v. *North Carolina*, *supra*; *Baldwin* v. *Baldwin*, 28 Cal.2d 406, 410-411 [170 P.2d 670] ; *cf. Crouch* v. *Crouch*, 28 Cal.2d 243, 249 [169 P.2d 897].) If the wife's right to support does not survive such an ex parte decree, she is compelled to protect that right indirectly by making a collateral attack on the decree. There is no reason to drive her to such a cumbersome and perhaps futile extreme. The policy considerations that require recognition of the foreign decree are not present when the question is the right to support. Since the courts have evolved rules of law that allow the husband readily to obtain a divorce, corresponding rules of law must be invoked to protect the wife and prevent injustice. Accordingly, we should give effect to an ex parte foreign decree obtained by the husband insofar as it affects marital status, but declare it ineffective on the issue of alimony, thus accommodating the interests of each

state by restricting it to matters of her dominant concern. (*Estin* v. *Estin, supra,* 334 U.S. 541, 549.)

For the foregoing reasons, I am of the opinion that a former wife domiciled in California can bring an action for support, either following a divorce decree granted her by a California court lacking personal jurisdiction over her former husband, or following an ex parte decree granted her former husband by a foreign court. Although the present action is by a nonresident wife subsequent to a divorce by a court of another state, there is no reason why the courts of this state should not entertain the action. "Alimony can in its discretion be granted by a court under the law of its own state in favor of a spouse against any spouse who is personally subject or whose property is subject to the jurisdiction of the court." (Rest. Conflict of Laws, § 463; *cf. Hiner* v. *Hiner,* 153 Cal. 254, 260 [94 P. 1044]; *Wynne* v. *Wynne,* 20 Cal. App.2d 131, 136 [66 P.2d 467].) Plaintiff invokes the inherent powers of courts of equity in this state to protect the rights of innocent persons and to prevent injustice. A former wife in the position of plaintiff may have a just claim to support from her husband upon dissolution of the marriage. By the marriage he assumed the obligation of supporting his wife, and he should not be allowed to escape that obligation by conduct that compels her to divorce him. The wife is entitled to her day in court, to have a court of equity pass on the merits of her claim that her former husband should support her. If the courts of this state are closed to her, the former husband may unconscionably avoid his obligations; if the action by the former wife is allowed, she will be able to present her claim for adjudication. California should not serve as an asylum to the former husband.

A former wife, however, would not be permitted to bring an action in California for support following an ex parte decree, if a similar action would not be entertained by courts of the state where she was domiciled at the time of the decree. If the wife was the plaintiff in the divorce action, and under the law of the state granting the decree the right did not survive divorce, the full faith and credit clause would compel California to give the same effect to the decree and hold that the decree not only dissolved the marriage status but terminated the wife's right to support. On the other hand, if the husband obtains the decree in another state and under the law of the state of the wife's domicile her right to support was lost when the marriage status terminated, she would like-

wise not be allowed, by migrating to another state, to revive a right that had expired.

The foregoing considerations are not present, however, if the husband leaves the wife, and the state of the wife's domicile holds that her right to support survives dissolution of the marriage. In that event, neither the full faith and credit clause nor reasons of policy would bar the action in a California court. Whether the wife obtains the decree in the state where she remains, or whether the husband obtains a valid decree in another state, we would be required to hold that the marriage status was dissolved (*Williams* v. *North Carolina,* 317 U.S. 287, 299 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]), but would not be required to deny the wife a right to bring an action in California for support and thus give the foreign decree greater effect in California than it would have in the state of the wife's domicile.

The question remains whether the judgment may be sustained on the merits. Under the Connecticut decisions, a wife granted a divorce for the misconduct of her husband may receive an allowance for her support, in the discretion of the trial court. (*LaBella* v. *LaBella,* 134 Conn. 312, 318 [57 A.2d 627].) "Alimony is awarded the wife divorced for the fault of her husband that he may continue to fulfill the obligation for her support which the law imposed upon him in virtue of the marriage contract." (*Cary* v. *Cary,* 112 Conn. 256, 260 [152 A. 302].) "It is based upon the duty of the husband to continue to support a wife whom he has in legal effect abandoned." (*Wright* v. *Wright,* 93 Conn. 296, 300 [105 A. 684].) In the present case, however, service of process was by registered mail in New York. Both parties agree that the *in personam* provisions of the Connecticut decree are invalid.* Plaintiff did not base this action upon the alimony provisions of the Connecticut decree and, in view of defendant's concession, he waived any contention that plaintiff's right to sup-

---

*Service outside the state by registered mail is apparently permissible under Connecticut statutes (Conn. Gen. Stats., Rev. 1949, § 7330), but no decision of the highest court of that state has been called to our attention and our research discloses none holding that an *in personam* judgment, like that in the present case, obtained on such service would be valid in Connecticut. (*Cf. Cikora* v. *Cikora,* 133 Conn. 456, 459 [52 A.2d 310]; *Kohler* v. *Kohler,* 12 Conn.Sup. 476; *Sattler* v. *Sattler,* 7 Conn. Sup. 179.) Such a judgment is not necessarily in violation of the United States Constitution. (*Milliken* v. *Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357]; but see *De La Montanya* v. *De La Montanya,* 112 Cal. 101 [44 P. 345, 53 Am.St.Rep. 165, 32 L.R.A. 82].)

port was merged into the Connecticut decree and that her exclusive remedy is an action thereon.

No Connecticut decisions have been discovered or cited by the parties that directly pass on the question whether a wife domiciled in Connecticut at the time of an ex parte divorce decree may subsequently bring an action for support. The Connecticut courts, however, follow the same rule as do the California courts and hold that the duty of the husband to support his wife may be continued after dissolution of the marriage as part of the obligations assumed by the marriage. (*LaBella* v. *LaBella, supra; Cary* v. *Cary, supra.*) In the absence of announcement of the law of Connecticut by the highest court of appellate jurisdiction of that state (Code Civ. Proc., § 1875(3); see *Loranger* v. *Nadeau,* 215 Cal. 362, 366 [10 P.2d 63, 84 A.L.R. 1264]; *Knox* v. *Pryor,* 10 Cal.App. 2d 76, 78 [51 P.2d 106]), we may assume that Connecticut would reach the same result as would California, and that Connecticut would protect the wife and not deny her the right to present her claim to support for adjudication. (*Cf. German* v. *German,* 122 Conn. 155, 163 [188 A. 429].)

In Connecticut, as in California, a former wife cannot obtain an allowance for support if the divorce is granted for the misconduct of the wife. (*Allen* v. *Allen,* 43 Conn. 419, 426; *Geer* v. *Geer,* 8 Conn.Sup. 279, 282.) As previously pointed out, defendant could have litigated the issue of his guilt in the present proceeding. At the trial, a copy of the Connecticut decree was admitted in evidence, providing that the divorce was granted plaintiff on the ground of defendant's "intolerable cruelty," and the case apparently was tried on the theory that the Connecticut decree settled that issue. Defendant did not contend at the trial or on appeal that the decree improperly granted plaintiff the divorce.

The award in the present case was for past support and not for future support. An action by a former wife for reimbursement of past expenses for her own support is not barred as a matter of law. Since she was unable to obtain an allowance for support until personal service could be made on her former husband, she should, absent proof of laches or the bar of a statute of limitation, in a proper case be allowed reimbursement, as well as an award of future support. Otherwise, a premium would be placed on the ability of the former husband to escape service of process. The former wife cannot, however, obtain greater relief in a subsequent action for support than she would have received had the divorce court

had personal jurisdiction over the former husband. She did not have at the time of the Connecticut decree an absolute right to continued support from her former husband; she had only a right to have a court pass on the merits of her claim that her husband should support her after the marriage had been dissolved. Since the former husband could have defeated or reduced a claim for support at the time of the divorce by showing that the amount claimed was not needed by the wife or that he did not have the ability to pay it, he similarly could contest a subsequent action for reimbursement for past expenses. Likewise, since an award made at the time of the decree could be increased or decreased by the divorce court on the ground of changed circumstances, either party can introduce evidence to show events that have occurred between the date of the divorce and the date of the action for support and that bear on the question of the amount of past support that should be awarded.

The final problem is whether the evidence in the present case justifies the amount of past support awarded plaintiff. The trial court in making an award for support, or in modifying an award on the ground of changed circumstances, must take into consideration the needs of the wife and the ability of the husband. It appears from the record in the present case that after defendant left plaintiff she sold the property in Connecticut that had been purchased with defendant's money, but placed in her name, and that, insofar as expenses for her own past support were concerned, plaintiff was never in need before her remarriage. Nevertheless, the trial court awarded her $1,950 for past support. Additionally, the awards for child support and suit money amounted to approximately $3,400 outright plus $37.50 per month for each child for future support. The evidence of defendant's ability to pay that sum, although sufficient to sustain the awards, is decidedly weak. When the evidence of plaintiff's need and defendant's ability to pay the additional $1,950 are viewed together, it is apparent that the award reimbursing plaintiff for expenses for her own support cannot be sustained. (See *Rawley* v. *Rawley*, 94 Cal.App.2d 562, 564 [210 P.2d 891]; *Farnsworth* v. *Farnsworth*, 81 Cal.App. 2d 380, 382 [184 P.2d 7].)

For the foregoing reasons, I concur in the affirmance of the judgment in favor of plaintiff on the cross-complaint, and in the reversal of that part of the judgment awarding plaintiff $1,950 for her past support, solely on the ground that

the evidence is insufficient to sustain the award. I dissent from the reversal of the judgments in favor of plaintiff in her actions for suit money and past and future child support, and from the majority opinion insofar as it holds that the trial court did not have jurisdiction to entertain plaintiff's action for her support.

SCHAUER, J., Concurring.—I concur in the judgment and also in the majority opinion except insofar as some expressions in the latter (unnecessary to the conclusion) may be deemed to indicate a view inconsistent with that expressed by me in a concurring opinion in *DeYoung* v. *DeYoung* (1946), 27 Cal.2d 521, 527 [165 P.2d 457].

In the DeYoung case I said: "In a divorce action in a foreign state upon constructive service the court there has authority to adjudicate status (in rem) of a person residing in that state but has not jurisdiction to adjudicate away (in personam) any of the then vested property rights of the absent spouse who does not reside in such state, who is not personally served with process in that state and who does not appear in the action. The personal rights of the spouses in property not within the jurisdiction of the acting court remain subject to litigation in the proper forum. It seems to me that the right of a wife, or in a proper case the husband, to support from the other spouse as of the date of the divorce is a property right which can be adjudicated only by a court having jurisdiction in personam.

"The above stated view does not necessarily conflict with the well established proposition that a court having jurisdiction over a domiciliary may adjudicate his marital status in rem and that (assuming due process) as an incident of the change of status any rights to future accruing support *dependent upon a continuing marital status* no longer accrue because the status no longer exists."

It is obvious from the quoted language that it has no application to a case such as the instant one in which it was the plaintiff herself who upon substituted service in Connecticut sought and procured the decree changing her status. She chose the forum and must be charged with knowledge of the limitations upon what relief she might get and also with knowledge of the character and extent of the rights which she would, or might, lose by bringing her action in that forum. In bringing that action she submitted herself to the jurisdiction of the Connecticut court for all purposes related to

the litigation she instituted. Her *in personam* rights growing out of or dependent on the marital status are not in that case terminated by any act of the husband or without her having her day in court but, rather, are ended by her own act in bringing and prosecuting the suit to terminate the marriage, and procuring and accepting the judgment which does dissolve it.

If the plaintiff here had wished to bring in California a personal action against her husband in respect to property rights growing out of or dependent upon the marital status, including the right of support, she could have brought such an action during the marriage regardless of her lack of residence in California. The fact that California, like most other states, has enacted legislation requiring a specified minimum period of residence before an action for divorce, as distinguished from an action for support, may be maintained should not be regarded as an excuse for permitting a plaintiff voluntarily and unnecessarily to split a cause of action and try the sections piecemeal in as many states as fancy dictates. If there is to be a divorce at all it is the better public policy that the decree of divorce shall settle for all time all the rights and obligations of the parties to the dissolved marriage to the end that litigation arising from such marriage shall end and be known to have ended, and that the parties may have an opportunity to build to a future, free from, and perhaps the better for, the past, rather than to be wrecked by recurring litigation. Except, then, where there is a complete jurisdictional failure, as was the situation mentioned in the DeYoung case in respect to the personal property rights of the absent spouse, the courts and legislatures should look with disfavor on delayed litigation between former spouses seeking to assert rights growing out of the status which has long since been dissolved.